810 A.2d 1240

PENNSYLVANIA STATE POLICE

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Pennsylvania State Troopers Association, Intervenor,

APPEAL OF PENNSYLVANIA STATE TROOPERS ASSOCIATION, Intervenor.

Pennsylvania State Police, Appellee

v.

Pennsylvania Labor Relations Board, Appellant.

Pennsylvania State Troopers Association, Intervenor.

Supreme Court of Pennsylvania.

Argued May 15, 2002.

Decided Nov. 25, 2002.

Anthony M. Caputo, Gary M. Lightman, Harrisburg, for Pennsylvania State Troopers Association, intervenor.

Jennifer Elizabeth Will, James Lowrie Crawford, Harrisburg, for Pennsylvania Labor Relations Board.

Frank A. Fisher, Jr., James M. Sheehan, Harrisburg, for Pennsylvania State Police, Appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### ORDER

PER CURIAM.

**AND NOW,** this 25th day of November 2002, the Order of the Commonwealth Court is hereby AFFIRMED. *See Upper*

*Makefield Township v. Pennsylvania Labor Relations Board,*
562 Pa. 113, 753 A.2d 803 (2000).

Justice SAYLOR files a dissenting statement.

Justice SAYLOR, dissenting.

In its *per curiam* Order affirming the decision of the
Commonwealth Court, the majority relies on *Upper Makefield
Twp. v. PLRB,* 562 Pa. 113, 753 A.2d 803 (2000), a case that
addressed the right of probationary employees to seek griev-
ance arbitration under Act 111. The present appeal, however,
concerns the duty on the Pennsylvania State Police to bargain
with the Pennsylvania State Police Association regarding al-
teration of existing terms and conditions of employment (as
discerned from past practice) of Association members. There-
fore, I do not agree that *Upper Makefield*'s holding is control-
ling. Moreover, as I believe, on application of the standards
governing judicial review of determinations of administrative
agencies, that the decision of the Pennsylvania Labor Rela-
tions Board presently under review is supported by substan-
tial evidence and in accordance with law, I respectfully dis-
sent. My reasoning is set forth in greater detail below.

The relevant facts are not in dispute. In 1984, the Com-
monwealth of Pennsylvania, Pennsylvania State Police (the
"State Police") began providing pre-termination hearings be-
fore review panels to probationary troopers facing employ-
ment termination for poor performance. The State Police
afforded the probationary troopers designated for dismissal
advance notice of any witnesses that would be appearing
against them and permitted representation by counsel (or
another) and presentation of responsive evidence. In 1993,
following discussions between the State Police and the Penn-
sylvania State Troopers Association (the "Association"), the
bargaining representative for troopers, the State Police also
began providing pre-termination hearings in disciplinary mat-
ters. In conjunction with dismissals of Troopers David T.
Burns and Scott C. Shade in 1995, however, the State Police
attempted to eliminate the pre-termination procedure, and the

Association responded by filing an unfair labor practice charge with the Pennsylvania Labor Relations Board (the "PLRB" or the "Board"). Prior to a hearing on that charge, however, the State Police and the Association reached an agreement (the "Burns and Shade Agreement"), providing for post-termination hearings and specifying procedures for accomplishing this task, with mutual reservation of rights pertaining to future disputes regarding whether bargaining was required in order to eliminate pre-termination hearings.[1] Despite such reservation, the State Police continued to apply the procedure outlined in the Burns and Shade Agreement, until 1998.

In correspondence transmitted in late May of that year, the State Police informed probationary Trooper Mark E. Encin that he was dismissed from employment, effective June 2, 1998. Although indicating that Trooper Encin's dismissal was based upon a hypoglycemic episode, in which he was observed in an altered state of consciousness requiring medical treatment, the letter did not provide for any type of pre-termination hearing. Similarly, the State Police provided probationary Trooper Gerald T. Devlin with written notice of his dismissal effective two days after the date of the notice. Again, although the correspondence delineated the basis for this employment decision (reckless operation of a motor vehicle that resulted in the death of another), it contained no mention of pre-termination procedure. When the Association learned of the State Police's renewed efforts to eliminate the hearing practice, it filed another unfair labor practice charge, asserting unilateral alteration of a term and condition of

1. In pertinent part, the agreement provided as follows:

   The parties agree that the use of the above procedure for the review of Troopers ... Burns and ... Shade is a full and final settlement and resolves all issues raised by the case referenced above. Both parties recognize that this settlement is without precedent and prejudice to the contractual and statutory rights of either party. The Pennsylvania State Police explicitly reserves any right it possesses to modify or discontinue either this process or the formerly used probationary Trooper review process, with the express understanding that the Pennsylvania State Troopers Association does not recognize or acknowledge such a right and may challenge any such unilateral change.

employment in violation of Sections 6(1)(a) and 6(1)(e) of the Pennsylvania Labor Relations Act ("PLRA").[2]

A PLRB-appointed hearing examiner conducted hearings and issued a proposed decision and order. *See Pennsylvania State Troopers Ass'n v. Commonwealth, Pa. State Police,* Proposed Decision and Order, No. PF–C–98–149–E, *slip op.* (PLRB May 24, 1999) [hereinafter *"PSTA v. State Police I"*]. At the outset, the hearing examiner recognized that an employer generally will be found to have committed an unfair labor practice when it unilaterally alters a bargainable term and condition of employment, as compared to changing course in a matter subject to managerial prerogative that is not subject to bargaining. *See id.* at 4 (citing *Plumstead Twp. v. PLRB,* 713 A.2d 730, 733 (Pa.Cmwlth.1998); *Frackville Borough Police Dep't v. PLRB,* 701 A.2d 632, 634 (Pa.Cmwlth. 1997)). In distinguishing between these categories of decisions, the hearing examiner viewed procedural matters as more closely associated with bargainable terms and conditions, and substantive decisionmaking as more closely aligned with managerial prerogative. Further, the hearing examiner invoked the traditional rational relationship test in evaluating the required nexus between the subject matter of the decision involved and the appropriate category of decisionmaking. *See PSTA v. State Police I, slip op.* at 4. *See generally PLRB v. State College Sch. Dist.,* 461 Pa. 494, 507, 337 A.2d 262, 268 (1975).

On review of the evidence, the hearing examiner found that the implementation, over a substantial period of years, of pre-termination hearings constituted a past practice on the part of

**2.** In relevant part, Section 6(1) of the PLRA provides as follows:
> (1) It shall be an unfair labor practice for an employer—
> (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.
>    * * *
> (e) To refuse to bargain collectively with the representatives of his employes....

Act of June 1, 1937, P.L. 1168, No. 294, § 6 (*as amended,* 43 P.S. §§ 211.6(1)(a), (e)). As further discussed below, these sections have been construed as subsuming unilateral alteration of a bargainable employment term and condition.

the State Police that was changed when the procedure was eliminated. *See PSTA v. State Police I, slip op.* at 4. In response to the State Police's citation to *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190 (1997), for the proposition that probationary troopers have no due process right to a hearing before discharge, the hearing examiner agreed, but distinguished *Pipkin* as involving constitutional and not labor law. *See PSTA v. State Police I, slip op.* at 5. Further, the hearing examiner viewed the pre-termination hearings as a matter of procedure, as opposed to substance, particularly since such proceedings merely permitted probationary troopers the opportunity to defend themselves, but did not infringe upon the criteria employed by the State Police in making dismissal decisions. *See id.* For this reason, the hearing examiner concluded that the affordance of hearings was more closely related to the probationary troopers' interest in terms and conditions of their employment than to the State Police's managerial prerogative to establish employment qualifications. *See id.* Thus, he concluded that elimination of the hearing procedure was a matter subject to bargaining. By way of remedy, the hearing examiner recommended that the State Police be directed to offer pre-termination hearings to probationary troopers who already had been dismissed, and cease and desist from refusing to negotiate with the Association concerning the matter. *See id.* at 5–6.

Subsequently, the PLRB dismissed exceptions filed by the State Police and rendered the hearing examiner's proposed decision and order absolute. *See Pennsylvania State Troopers Ass'n v. Commonwealth, Pa. State Police,* Final Order, No. PF–C–98–149–E, *slip op.* (PLRB Dec. 21, 1999) [hereinafter *"PSTA v. State Police II"*]. The PLRB opened its analysis by addressing the status of probationary troopers under Act 111, 43 P.S. §§ 217.1–217.7. The Board noted that the Commonwealth Court had determined that Act 111 does not, in and of itself, confer protections on probationary troopers, in the absence of specific language in the collective bargaining agreement or other controlling contractual or legislative requirements. *See id.* at 3 (citing *Township of Sugarloaf v. Bowling,* 722 A.2d 246, 249 (Pa.Cmwlth.1998), *aff'd in part*

*and vacated in part,* 563 Pa. 237, 759 A.2d 913 (2000)). In this regard, however, the PLRB highlighted the provision in the collective bargaining agreement between the State Police and the Association to the effect that "members" covered by its terms include probationary troopers, except where specifically excluded. *PSTA v. State Police II, slip op.* at 3.[3] The PLRB also noted the consensus among all parties to the unfair labor practice proceeding that probationary troopers are members of the bargaining unit. *See id.*

Additionally, the PLRB criticized the implication of the Commonwealth Court's decision in *Township of Sugarloaf* to the effect that probationary officers are outside the scope of Act 111, observing the disharmony of such decision with longstanding Board precedent, as well as that of this Court. While the Board did not dispute the assertion that the State Police possessed broad discretion to terminate probationary troopers as provided in Section 205(f) of the Administrative Code of 1929, 71 P.S. § 65(f), the Board concluded that probationary troopers need not be removed from Act 111's ambit to comply with this statutory directive. *See PSTA v. State Police II, slip op.* at 3–4. The Board drew an analogy to *Board of Educ. v. Philadelphia Federation of Teachers Local No. 3 (Vahey),* 464 Pa. 92, 346 A.2d 35 (1975), which arose under the Public Employe Relations Act, 43 P.S. §§ 1101.101–1101.2301. In that case, this Court held that a school district may agree in a collective bargaining agreement to submit the propriety of discharging a non-tenured teacher to arbitration, despite legislative conferral of discretion on the district concerning termination of such employees. *See id.* at 106–07, 346 A.2d at 43. The PLRB emphasized this Court's reasoning to the effect that the provision of hearings to the teachers was not statutorily proscribed and did not restrict the district's ability to establish the substantive criteria for dismissal.[4]

---

**3.** Additionally, the collective bargaining agreement recognizes the Association as the "exclusive representative for collective bargaining purposes for all State Police members," with the only exceptions being "the Commissioner, Deputy Commissioners and cadets." CBA, Art. I.

**4.** *See id.* at 97–98, 346 A.2d at 38 ("The mere fact that a particular subject matter may be covered by legislation does not remove it from

The PLRB next addressed the State Police's citation to *Pipkin* in a manner substantially similar to the hearing examiner's assessment—acknowledging that probationary troopers do not have a constitutional right to continued employment, the PLRB nevertheless did not read the decision as addressing, much less foreclosing, the enforcement of terms and conditions of their employment. The PLRB pointed out that application of the rational relationship test is not grounded in constitutional considerations, but rather, entailed the task, arising in the labor law setting, of balancing the employers' managerial interest in controlling the disputed term and the effect of the employer's actions on the employees. *See PSTA v. State Police II, slip op.* at 4–5 ("The absence of constitutional due process protections for probationary troopers does not preclude the possibility that PTRP hearings may be a mandatory subject of bargaining under Act 111 and the PLRA."). *See generally Ellwood City Police Wage and Policy Unit v. PLRB,* 731 A.2d 670, 673 (Pa.Cmwlth.1999); *Plumstead Twp.,* 713 A.2d at 735.

Based on the character of pre-termination proceedings and the State Police's past practice of implementation, the PLRB determined that the procedure "constituted a term and condition of employment for every probationary trooper hired by the Commonwealth since 1984. Probationary troopers facing dismissals have consistently been afforded the opportunity to defend themselves in dismissal proceedings." *PSTA v. State Police II,* at 5. While the Board did not dispute the State Police's assertion that it possessed broad discretion to terminate probationary troopers as provided in Section 205(f) of the Administrative Code, it concluded that pre-termination hear-

collective bargaining ... if it bears on the question of wages, hours and conditions of employment ... [;] [the Act] only prevents the agreement to and implementation of any term which would be in violation of or inconsistent with any statutory directive."); *cf. Commonwealth v. State Conference of State Lodges of the Fraternal Order of Police,* 525 Pa. 40, 51, 575 A.2d 94, 100 (1990) (explaining that the provision of grievance arbitration as an alternative to court martial under the Administrative Code "in no way detracts from the Commissioner's authority to establish rules and regulations to retain employment in the state police or to set forth grounds for discharge").

ings did not disrupt the Commissioner's discretion or authority, but merely afforded the troopers the opportunity to defend themselves prior to termination—an opportunity the PLRB found was rationally related to their terms and conditions of employment.

As further support for its application of the rational relationship inquiry, the PLRB analogized decisions related to promotions, reasoning:

> an employer is under no obligation to bargain over the *criteria* it uses in making a promotional decision, yet the employer must bargain over the *procedures* to be followed in filling a position. Similarly, the Commonwealth is under no duty to bargain over the criteria for retaining or dismissing probationary troopers, yet it must bargain over the procedures to be followed in doing so.

*PSTA v. State Police II,* at 5 (citing *East Allegheny School Dist.,* Proposed Decision and Order, 13 PPER ¶ 13060 (1982); *Harrison Twp. Water Auth.,* Final Order, 29 PPER ¶ 29806 (1998)). The Board summarized its conclusions in this regard as follows

> The hearing examiner's determination that the PTRP hearings are a mandatory subject of bargaining is consistent with the Board's longstanding policy of considering the public employer's management objectives. For an issue to be deemed a managerial prerogative and thus not a mandatory subject of bargaining, the managerial policy must substantially outweigh any impact an issue will have on the performance of the duties of the police. As discussed above, the Commonwealth's managerial prerogative to establish the qualifications for positions is unaffected by collective bargaining over the procedures for dismissal of probationary troopers. The Commonwealth maintains complete control over the qualifications and criteria to be used in the decision to retain or dismiss probationary troopers. The Commonwealth's interest in establishing qualifications for

positions and the probationary troopers' interest in defending themselves in dismissal proceedings are compatible. *PSTA v. State Police II*, at 5–6.

On further appeal, the Commonwealth Court reversed, finding no rational relationship between pre-termination hearings for probationary troopers and bargainable terms and conditions. *See Pennsylvania State Police v. PLRB*, 764 A.2d 92, 94 (Pa.Cmwlth.2000). In support of its holding, the court reiterated that of *Pipkin* to the effect that the dismissal of a probationary trooper was not an adjudication and the trooper was not entitled to due process protections or the right to appeal the dismissal, *see Pennsylvania State Police v. PLRB*, 764 A.2d at 94, and emphasized the Administrative Code's Section 205(f) conferral upon the State Police Commissioner of discretion to dismiss a probationary trooper, *see id.* The Commonwealth Court did not, however, address the distinction drawn by the PLRB between the constitutional rights at issue in *Pipkin* and interests arising under labor law (here, the right to bargain concerning the modification of existing terms and conditions of employment). Further, it did not consider the PLRB's assessment that, although the Administrative Code's conferral of discretion on the State Police pertaining to retention of probationary troopers is broad, the statute does not foreclose the application of pre-termination procedures.

The Commonwealth Court also found guidance in *Upper Makefield*, 753 A.2d at 803, decided by this Court after the issuance of the PLRB's decision. The Commonwealth Court read *Upper Makefield* as restricting probationary troopers' rights, in light of their status as "at will" employees, solely to those conferred by the collective bargaining agreement. Concomitantly, the court opined that the protections of Act 111 extend solely to troopers who have completed their probationary period of employment. *See Pennsylvania State Police v. PLRB*, 764 A.2d at 95. Explaining that the relevant collective bargaining agreement did not confer upon probationary troopers any avenue of redress, the Commonwealth Court concluded that such troopers have no vested interest in pre-termi-

nation procedure. While apparently crediting the Board's finding of a past practice, although characterizing the practice as "sporadic," the court also observed that the State Police had reserved the right to unilaterally cease its past practice of providing those hearings, in an apparent reference to the Burns and Shade Agreement. *See id.*

Appellate review of PLRB orders is circumscribed by the statutory directive that factual findings of the Board are binding if supported by substantial evidence, just as are agency conclusions if they are in accordance with law. *See* 2 Pa.C.S. § 704. *See generally Borough of Lewistown v. PLRB,* 558 Pa. 141, 148 n. 7, 735 A.2d 1240, 1243 n. 7 (1999).[5] Further, courts have recognized, with particular emphasis in the labor arena, that substantial deference is to be accorded to agency expertise. *See Borough of Nazareth v. PLRB,* 534 Pa. 11, 16 & n. 5, 626 A.2d 493, 496 & n. 5 (1993) (emphasizing that "the PLRB is in the best position to resolve *all* unfair labor practice issues" (emphasis in original)); *South Park Twp. Police Ass'n v. PLRB,* 789 A.2d 874, 878 (Pa.Cmwlth.2002) ("It is well settled that this Court is required to give great deference to the administrative expertise of the PLRB."); *Plumstead Twp.,* 713 A.2d at 734–35 & n. 16 (explaining that the PLRB "possesses administrative expertise in the area of public employee labor relations and ... great deference ought to be given to the PLRB's assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith") (quoting *City of Philadelphia v. PLRB,* 138 Pa.Cmwlth. 113, 120, 588 A.2d 67, 71 (1991)).

Here, the PLRB discerned a longstanding past practice giving rise to a bargainable employment term/condition. Such assessment, at a minimum, has substantial factual overtones and implicates agency expertise and necessary deference. *See Borough of Nazareth,* 534 Pa. at 16 & n. 5, 626 A.2d at 496 &

5. Although review is also available for constitutional violations and procedural irregularities in the administrative process, *see* 2 Pa.C.S. § 704, no such allegations are present in this case.

n. 5; *Plumstead Twp.*, 713 A.2d at 734–735 & n. 16; *cf. Amalgamated Transit Union, Local 1564, AFL–CIO v. Southeastern Mich. Transp. Auth.*, 437 Mich. 441, 473 N.W.2d 249, 257 (1991) (characterizing the existence of a term or condition of employment as a factual matter). Significantly, the State Police does not challenge the past practice determination as lacking support by substantial evidence, and the Commonwealth Court, although characterizing the practice as sporadic in an apparent effort to diffuse its significance, did not dispute its existence in accordance with the PLRB's findings. The Commonwealth Court's allusion to the effect of Burns and Shade is also unpersuasive, since the agreement was consummated long after the commencement of the pre-termination practice and contained reservations of rights on behalf of *both* parties in relation to their dispute concerning the existence of a past practice. Further, I am in full agreement with the PLRB's reasoning distinguishing *Pipkin* as involving constitutional, as opposed to statutory or contractual entitlements, and reconciling Section 205(f) of the Administrative Code as speaking to discretion in the substantive decision-making process, but not as prohibiting the application of non-determinative, pre-termination procedure. As noted, the Commonwealth Court's reasoning is materially lacking in its failure to account for such substantial distinctions.

The more difficult question is the status afforded to probationary troopers as a consequence of this Court's decision in *Upper Makefield.* Certainly the Commonwealth Court's summary of the decision is accurate, but attention must be given to the factual context of a case in applying its holding. *See, e.g., Commonwealth v. McCann,* 503 Pa. 190, 195, 469 A.2d 126, 128 (1983) ("The holding in [a particular case] as in all cases, must be read in the context of its facts."). As noted, *Upper Makefield* concerned the ability of probationary troopers to grieve, whereas this appeal concerns the entitlement of a collective unit to bargain on behalf of member probationary troopers. Particularly in light of this substantial distinction and the PLRB's decision to accord probationary troopers the benefit of bargainable terms and conditions of employment,

the inquiry at hand deserves further consideration by this Court beyond mere citation to *Upper Makefield.*

As groundwork for such consideration, I believe it is important to bear in mind that, in *Upper Makefield,* this Court's reasoning was constrained by its prior expressions concerning Act 111. Most significantly, the Court previously had established that Act 111 employees are possessed with an entitlement to grieve via arbitration, with resulting awards substantially insulated from judicial review via application of a narrow certiorari standard. *See Pennsylvania State Police v. Pennsylvania State Troopers Ass'n (Betancourt),* 540 Pa. 66, 76–78, 656 A.2d 83, 88–89 (1995). As applied to probationary troopers, however, this holding was in tension with various statutory provisions affording substantial and largely inviolable deference to the sound judgment of public employers. *See, e.g., Upper Makefield,* 562 Pa. at 119, 753 A.2d at 806–07 (citing 53 P.S. § 812); 71 P.S. § 65(f). *See generally Township of Sugarloaf,* 722 A.2d at 248–49. While it is not apparent from the face of the decision, the *Upper Makefield* Court was therefore bound to deny probationary troopers the full benefit of Act 111 precisely because the Court previously had read Act 111 broadly to subsume a statutory entitlement to an insulated grievance arbitration procedure that simply could not be made available to probationary troopers.[6]

6. I did not participate in the *Betancourt* decision, as it pre-dated my tenure on the Court, and would not have reached the same conclusion. Act 111's insulated procedure for arbitration was expressly crafted in the context of interest arbitration arising out of a bargaining impasse and made available to the public employer and collective bargaining unit. *See* 43 P.S. §§ 217.4–217.7. Act 111 contains no specific provision pertaining to individual grievance arbitration, and good reason exists to differentiate legislative purposes related to impasses and grievances, since bargaining impasses implicate a far more immediate and direct potential for destabilization in the workforce (the seminal concern of Act 111) than does the resolution of individual grievances. *See generally Philadelphia Fire Officers Ass'n v. PLRB,* 470 Pa. 550, 553–54, 369 A.2d 259, 260 (1977) (explaining that Act 111, to prevent strikes by police and fire personnel, provides for collective bargaining and compulsory and binding arbitration in the event of an impasse). In light of this distinction, Act 111's isolated and general reference to settlement of grievances or disputes in accordance with the terms of the enactment, 43 P.S. § 217.1, could have been read as an allusion to grievance

In the course of crafting the necessary exception to *Betancourt*'s rule, the *Upper Makefield* Court relied on the at-will status of probationary employees; the statutory conferrals of employer deference in dismissals; and a conclusion that the probationary officer at issue failed to establish a statutory or contractual entitlement. *See Upper Makefield*, 562 Pa. at 118–20, 753 A.2d at 807. The at-will status of employees in the labor context, however, can be taken only so far, since this characterization applies to most employees in the marketplace prior to the conferral of rights by virtue of collective bargaining, and therefore, represents only a starting point for the assessment of entitlements conferred or gained in labor cases. Further, as previously noted, the statutory grant of discretion to the State Police in relation to the retention of probationary troopers does not prohibit the implementation of procedures that are not inconsistent with its exercise. *See supra*. Here, the PLRB rendered a decision, supported in the record, that the pre-termination practices were such that they did not interfere or conflict with the legislatively protected discretion. Finally, *Upper Makefield* is distinguishable from the present case in that the PLRB's decision under review here establishes, as a matter of fact, a past practice on the part of the State Police, which forms the predicate for a bargainable term and condition. The sole basis in *Upper Makefield* for the

procedure established through the Act 111 bargaining process. Alternatively, the clause also could have been read as utilizing the terms grievances and disputes synonymously to refer to differences between the collective unit and the employer in bargaining, particularly as the pertinent provision bears the title "right to bargain," speaks to rights exercised "through labor organizations or other representatives designated by fifty percent or more of such policemen," and in all other respects is concerned with the rights and interests of the unit. *See* 43 P.S. § 217.1.

I did participate in *Upper Makefield* and remain of the belief that the decision was correct—given that *Betancourt* represented the prevailing law to which no challenge was presented, the need to craft an exception to its mandate arose in light of the conflict with enactments concerning employer discretion in the retention of probationary policemen. I would not have joined *Upper Makefield*, however, had I foreseen that it would be interpreted so broadly as to preclude a class of policemen from benefiting from the terms and conditions of their employment as discerned by the PLRB in its factfinding capacity and in application of its administrative expertise.

probationary officer's claim to an entitlement to such arbitration was that Act 111 required grievance arbitration (as *Betancourt* held).

In light of the above, what the Court did not say in *Upper Makefield* is perhaps as important as its expressed reasoning. Although the Court began to consider whether probationary troopers were "policemen" for purposes of Act 111, *see Upper Makefield*, 562 Pa. at 118, 753 A.2d at 806, it did not expressly answer this inquiry. The Court did not state that probationary troopers are utterly excluded from Act 111. Moreover, the Court did not consider or decide whether bargainable terms and conditions with respect to probationary employees can be derived from past practice, as they generally can for the vast majority of employees in the union context. *See County of Allegheny v. Allegheny County Prison Employees Indep. Union*, 476 Pa. 27, 34, 381 A.2d 849, 852 (1977) (explaining that past practice may be used to establish a "separate enforceable condition of employment which cannot be derived from the express language of the agreement"); *see also Ellwood City*, 731 A.2d at 672 (discussing past practices in the context of an employer's mandatory duty to bargain over a subject); *cf. United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (observing that "the industrial common law-the practice of the industry and the shop—is part of the collective bargaining agreement although not expressed in it").

Since these questions were not resolved in *Upper Makefield*, I would take the present opportunity to answer them. Certainly, Act 111's coverage is made expressly available on an unqualified basis to "policemen" employed by the Commonwealth or a political subdivision. *See* 43 P.S. § 217.1. Its general protections are therefore facially available to probationary troopers, through their authorized representatives, as these troopers are subject to police duty assignments and are not excluded by the Act; moreover, this plain meaning interpretation is strongly advocated by the PLRB, the administrative agency vested with Act 111 oversight responsibility. As noted, the need for some form of exception to Act 111's scope

in relation to probationary troopers arose from *Betancourt*'s interpretation of the statute (since *Betancourt* made a specially insulated form of grievance arbitration available to Act 111 employees), and application of such procedure in favor of probationary troopers would conflict with express statutory mandates extrinsic to Act 111. In this unique situation, I believe that the Court should restrain itself from permitting even the implication that it has removed a class of persons facially covered by Act 111 entirely from its protections merely to avoid any inconsistency in *Betancourt*'s application.[7] Rather, it is appropriate to craft the essential exception to *Betancourt*'s rule narrowly, to achieve the necessary objective without the collateral consequences implicated by the Court's present *per curiam* Order.

In summary, the legal issue in this case can be framed as whether probationary troopers, who are members of the Association, should be deprived of the benefit of such terms/conditions protections as are expressly made available to all policemen under Act 111 and are not inconsistent with other pertinent statutory provisions. As I would answer this question in the negative, I would reverse the order of the Com-

**7.** The PLRB highlights that, in order to deprive probationary troopers of Act 111's express protections, it would be necessary to effectively exclude them from the collective bargaining unit; since the legislation's stated terms inure in favor of the interests of the collective body, as long as the troopers are members of the Association, Act 111's benefits flow to them. Indeed, all parties to this case agree that probationary troopers should not be excluded from the Association. *See, e.g.,* Brief of Appellee Commonwealth of Pennsylvania State Police, at 13 ("The Commonwealth Court's decision [applying *Upper Makefield*] does not ... deprive probationary employees of the right to have the terms and conditions of their employment, for the duration of the probationary period, determined through the bargaining process.").

Notably, if probationary troopers, who are undeniably public employees, are said to fall outside the ambit of Act 111, they would facially be covered by the express terms of the Public Employe Relations Act (PERA), which defines a public employee as "any individual employed by a public employer but shall not include ... those employes covered under [Act 111]." 43 P.S. § 1101.301(2). Since, however, PERA confers not only a right to collectively bargain, but also the entitlement to strike under certain circumstances, *see* 43 P.S. §§ 1101.701, 1101.1003, its direct application to any category of troopers would be inimical to Act 111's purposes in limiting the recourse available to essential police and fire personnel in impasse situations.

monwealth Court and reinstate the PLRB's determination that the State Police engaged in an unfair labor practice by unilaterally eliminating a term and condition of the probationary troopers' employment.