Rodger GEHRING, Petitioner

v.

**PENNSYLVANIA LABOR RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 30, 2004.

Decided May 20, 2004.

Anthony C. Busillo, II, Harrisburg, for petitioner.

James L. Crawford, Harrisburg, for respondent.

Scott E. Blissman, Philadelphia, for intervenor, Borough of Hamburg.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.

In this appeal, we are asked to decide whether a *probationary* police officer is protected from discharge for engaging in union activities. Rodger Gehring appeals the order of the Pennsylvania Labor Relations Board (PLRB) dismissing his charge of unfair labor practices for lack of jurisdiction.

In his Specification of Charges, Gehring alleges that, on February 3, 2003, he was sworn in as a full-time probationary police officer for the Borough of Hamburg (Borough). He had previously worked for the

Borough as a part-time police officer. On the date he began full-time status, he was advised that he would be considered to be less senior than another newly-hired police officer who had never worked for the Borough. Gehring disputed this and the Hamburg Police Officers' Association filed a grievance on his behalf seeking adjustment of his seniority to reflect his prior service. Following the filing of the grievance, Gehring had several conversations with Chief of Police Zelinsky, who informed him that the filing of the grievance "will look bad for him" and that it would not help his career. (Specification of Charges, p. 3). Chief Zelinsky also told the Mayor of Hamburg that "he [Zelinsky] doesn't want an officer working for him that is going to file a grievance against him." *Id.* Additionally, the Borough Council President also mentioned that the Borough "was not looking for this in a supervisor or corporal." *Id.*

Gehring alleges that, from February 3, 2003 until March 26, 2003, he was an exemplary employee. In fact, on March 26, 2003, he received a special commendation for his work in a drug arrest. On the same date, however, Gehring was advised that he was being suspended pending an investigation by Chief Zelinsky. On April 15, 2003, a notice of termination was issued to Gehring and cited various charges of misconduct. Gehring alleges that his termination was retaliatory in nature and motivated by anti-union animus expressed by key Borough officials.

Gehring filed a charge of unfair labor practices with the PLRB, alleging that the Borough had terminated him from his position as a probationary police officer solely for anti-union reasons. The Secretary of the PLRB issued a letter on June 5, 2003, indicating that no complaint would be issued in this matter because, as a probationary employee, Gehring had no cause of action for an unfair labor practice charge. Gehring timely filed exceptions to the Secretary's determination. The PLRB dismissed Gehring's exceptions, believing that it had no jurisdiction over the matter because Gehring, as a probationary employee, did not fall within the protections of what is colloquially known as Act 111.[1] It is from that order that Gehring appeals to this Court.[2]

Gehring's sole issue on appeal is whether the PLRB erred by concluding that probationary police officers are not protected from discharge based upon union activities. For purposes of this appeal, we must assume that all Gehring's allegations are true, and that he was, in fact, discharged for engaging in union activities.[3] If the PLRB was correct in its ruling, probationary employees have no protected right to engage in union activities under the PLRA and employers can discharge those employees for anti-union reasons. In order to address this issue, we must examine both Act 111 (providing for mandatory collective bargaining for police and firefighters in return for giving up the right to strike) and the Pennsylvania Labor Relations Act[4] (PLRA) (providing

1. Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

2. Where, as here, there has been no hearing and no factual findings have been made, our scope of review is to determine whether the Board has committed a constitutional violation or an error of law. *See* Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. Of course, he would have the burden to prove that these allegations are true if the charge is not dismissed.

4. Act of June 1, 1937, P.L. 1168, *as amended*, 43 P.S. §§ 211.1–211.13.

for, *inter alia,* the right to unionize and for remedies against employers who interfere with an employee's right to engage in union activities). The parties agree that the two acts are to be read in *pari materia.*[5]

■ Both Act 111 and the PLRA authorize employees to engage in union activities. Act 111 is directed exclusively toward specific public officers, conferring upon "police or firemen" "the right *to bargain collectively* with their public employers *concerning the terms and conditions of their employment* ... and ... *the right to an adjustment or settlement of their grievances or disputes* in accordance with the terms of [the] act." 43 P.S. § 217.1 (emphasis added). Act 111 specifies that the sole mechanism for settling disputes is through binding arbitration. 43 P.S. §§ 217.4 and 217.7. However, under Act 111, probationary employees are afforded no rights. *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000).

In contrast, the PLRA covers a significantly broader group of employees than does Act 111 in its limited scope. The language of the PLRA recognizes the right to collective bargaining by "employees," who include:

any employe, and shall not be limited to the employes of a particular employer, unless the act explicitly states otherwise, and shall include *any individual* whose work has ceased as a consequence of, or in connection with, any current labor dispute, or because of any unfair labor practice, and who has not obtained any other regular and substantially equiva-

lent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any person in the home of such person, or any individual employed by his parent or spouse.

43 P.S. § 211.5 and § 211.3 (emphasis added). The PLRA specifically prohibits employers from interfering with the rights of employees to engage in union activities, deeming such actions on an employer's part to be "unfair labor practices." 43 P.S. § 211.6. Specifically, unfair labor practices include:

(1) It shall be an unfair labor practice for an employer—

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

\* \* \*

(c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization. ...

43 P.S. § 211.6(1)(a) and (c). Further, the PLRB possesses *exclusive* jurisdiction over allegations of unfair labor practices, which must be brought under the PLRA. 43 P.S. § 211.8(a). The PLRB is authorized to enforce employee rights under the PLRA, and is, therefore, empowered to issue cease and desist orders against an employer, order reinstatement, and mandate the filing of periodic reports. 43 P.S. § 211.8(b). Further, the method for resolving an unfair labor practice dispute

**5.** Our Supreme Court, in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), determined that Act 111 and the PLRA must be read *in pari materia* because, although Act 111 confers the right on police officers and firefighters to bargain collectively, it does not provide any procedural mecha-

nisms for the exercise of that right. Thus, in *Philadelphia Fire Officers,* where employees covered by Act 111 wanted to select a bargaining unit representative, and Act 111 was silent on the process for doing so, the Court turned to the PLRA to design a procedure for the selection process.

under the PLRA is not *binding arbitration,* which is an Act 111 remedy; instead, the PLRA provides for the adjudication of an unfair labor practice petition under the provisions of the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–704.

The issue of whether a probationary police officer's termination for engaging in union activities can be considered an unfair labor practice under the PLRA is not specifically addressed in the statute, nor has it been addressed by our courts. Our appellate courts have had opportunity, however, to discuss various aspects of the PLRA, and its interplay with Act 111. We turn for guidance to those cases to assist us in addressing this specific issue of first impression now before us.

In 1993, the Supreme Court recognized that police officers could file an unfair labor practice petition under the PLRA. In *Borough of Nazareth v. Pennsylvania Labor Relations Board,* 534 Pa. 11, 626 A.2d 493 (1993), the Court addressed whether the employer's failure to proceed to interest arbitration with the police officers' union was an unfair labor practice over which the PLRB had jurisdiction. The case arose when the union filed an unfair labor practice charge. In concluding that the employer's action did constitute an unfair labor practice, the Court acknowledged, again, the absence of any procedural framework in Act 111 and stated that:

> While the provisions of Act No. 111 were enacted later than the PLRA and, of course, are controlling where the situation warrants, unlike the PLRA ..., Act 111 does not have a specific section which addresses unfair labor practices. Additionally, although Act 111 does not contain a section which specifically gives the PLRB jurisdiction, the PLRB is empowered under Section 8 of the PLRA (43 P.S. § 211.8(a)) to prevent any person from engaging in any unfair labor

practice listed in Section 6 of the [PLRA].

*Id.* at 15, 626 A.2d at 495–96. Consequently, the Supreme Court concluded that, under Section 4 of Act 111, both the police officers, through their union, and the employer have the right to file an unfair labor practice petition with the PLRB to compel the other party to proceed to interest arbitration. For our purposes, what distinguishes *Borough of Nazareth* from this case is that, here, the officer who is the alleged victim of the unfair labor practice charge is a *probationary* employee. Thus, while the case is useful for the general proposition that police and firefighters can file unfair labor practice petitions, it does not address the narrow issue before us.

More recently, our Supreme Court determined that *probationary* police officers were not afforded the protections *of Act 111,* unless a collective bargaining agreement specifically granted to a probationary police officer avenues of redress. In *Upper Makefield Township,* the substantive right the probationary officers asserted was the right to file for mandatory arbitration of their grievances *under the substantive provisions of Act 111.* The Supreme Court reasoned that:

> The very notion of probationary employment sets those employees apart from the others, signaling that they are new, newly transferred or newly promoted and that they must prove themselves in the new position before being considered permanently employed therein.... Implicit in the term "probationary" is that the employee is being tested or evaluated on the job. The time limit signals that the evaluation period will not last forever before a decision is made pursuant to which the employee will either be retained and thereby vested with the full rights and responsibilities of the nonprobationary employee or will be termi-

nated, having not completed the probationary period satisfactorily. As this creates a strictly "at will" relationship between the employer and employee during the probationary period, a probationary employee is not entitled to register a grievance should he or she not be retained past the probationary period. *Id.* at 117–118, 753 A.2d at 806. The Court, thus, concluded that probationary status distinguished those police and fire officers who come within the ambit of Act 111 protections from those who do not. Only upon satisfactory completion of a probationary period can police and fire officers come within the protections of Act 111 and "assume a status protected by the right to bargain collectively and to have their grievances heard." *Id.* at 118, 753 A.2d at 806. Both the PLRB and the Borough rely extensively on this case. However, we conclude that it, too, is distinguishable from the matter *sub judice*, because the probationary officers in *Upper Makefield Township* asserted a **substantive** right *under only Act 111* (the right to mandatory arbitration of grievances), and not a substantive right under the PLRA.

Finally, in 2000, this Court addressed whether the Pennsylvania State Police, as an employer, committed an unfair labor practice when it unilaterally ceased to provide pre-termination hearings for probationary state troopers facing dismissal. In *Pennsylvania State Police v. Pennsylvania Labor Relations Board*, 764 A.2d 92 (Pa.Cmwlth.2000), *affirmed per curiam*, 570 Pa. 595, 810 A.2d 1240 (2002), we reversed the decision of the PLRB in which it had held, after looking at "past practices," that the employer had unilaterally modified the existing terms and conditions of employment. In reversing and determining that there was no unfair labor practice, we stated that even though the collective bargaining agreement encompassed probationary troopers generally, Section 205(f) of The Administrative Code of 1929 [6] specifically granted the State Police Commissioner discretion to dismiss a probationary trooper. Thus, relying on this statutory provision, we concluded that the State Police's unilateral cessation of pre-termination hearings was not a bargainable issue. We also held that absent any right to a pre-termination hearing pursuant to the collective bargaining agreement or a statute, which right the probationary police officers did not have, the Commonwealth had not committed an unfair labor practice.[7] Both the PLRB and the Borough rely on this case. However, we determine that it, too, is distinguishable from the case *sub judice* because, unlike the probationary employees there, who relied on the collective bargaining agreement as a source for their alleged substantive right, which right we ultimately found not to exist, Gehring relies on a fundamental

---

6. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 65(f).

7. Although our Court's decision was affirmed per curiam, Justice Saylor filed a lengthy and strident dissenting statement in which he noted that "the statutory grant of discretion to the State Police in relation to the retention of probationary troopers does not prohibit the implementation of procedures that are not inconsistent with its exercise.... Here the PLRB rendered a decision, supported in the record, that the pre-termination practices were such that they did not interfere or conflict with the legislatively protected discretion." 570 Pa. at 607, 810 A.2d at 1248. He went on to distinguish *Upper Makefield Township* by noting that, "the PLRB's decision under review here establishes, as a matter of fact, a past practice on the part of the State Police, which forms the predicate for a bargainable term and condition," whereas the sole basis for the employee's claim in *Upper Makefield Township* had been his reliance on the Act 111 statutory provision providing the right to grieve. 570 Pa. at 607–08, 810 A.2d at 1248.

substantive right *arising under the PLRA itself,* i.e., the right to engage in union activities.

To recapitulate, what is precisely at issue in the present case is *not* whether, as a probationary police officer, Gehring has a general right to file a grievance or assert a violation of the collective bargaining agreement under Act 111. Clearly, according to *Upper Makefield* and *Pennsylvania State Police* he possesses no such right. Rather, the precise issue is whether, even though Gehring is a probationary police officer, it is an unfair labor practice, *based on the substantive provision appearing in Section 5 of the PLRA,* for the Borough to discharge him for engaging in union activities.[8] Act 111 does not, in any way, address this issue; consequently, case law that addresses substantive rights emanating from that act is of limited value. The PLRA however, does address this issue. The provisions concerning unfair labor practices set forth in the PLRA are applicable to "employees," and, as noted earlier, that term does not exclude probationary police officers. Moreover, in construing that definition we are guided by the stated public policy in Section 2 of the PLRA, which is:

> to encourage the practice and procedure of collective bargaining and to protect the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own

choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection, free from the interference, restraint or coercion of their employers. 43 P.S. § 211.2(c).[9] Nothing in the definition of "employee" specifically excludes either police and fire personnel or probationary employees of any type from the protections of the PLRA, although, clearly, the legislature did provide other specific exclusions. Given this definition, together with the sweeping public policy concerns quoted above, we conclude that there is nothing in Act 111 that would preclude a probationary police officer from being protected against termination for engaging in protected union activities. We, thus, conclude that the PLRB does not lack jurisdiction over this action solely because Gehring is a probationary police officer.[10]

Having determined that the PLRB does have jurisdiction over this issue, *Borough of Nazareth,* we vacate its order dismissing Gehring's charge of unfair labor practices for lack of jurisdiction and remand the case to the PLRB to proceed under the PLRA to determine if a complaint should issue.

### ORDER

**NOW,** May 20, 2004, the order of the Pennsylvania Labor Relations Board in the above-captioned matter is hereby vacated

---

**8.** In the Specification of Charges, Gehring inartfully lumps the right to file a grievance under Act 111 with the right to be protected from recriminations for engaging in union activities under the PLRA. As noted previously, the former is clearly not a right afforded to him under *Upper Makefeld.* The latter is precisely what is at issue here.

**9.** While the term "workers," as used in Section 2 of the PLRA, is undefined, the substantive right to unionize appearing in Section 5 of the PLRA uses the term "employees."

**10.** We also note that the PLRA prohibits an employer from discouraging membership in any labor organization by discrimination in regard to hiring or tenure. 43 P.S. § 211.6(1)(c). If Gehring proves that he was terminated because of the Borough's anti-union animus, it could discourage membership in the union by the non-probationary employees.

and the case is remanded for the Board to proceed with such further action as may be warranted under the Pennsylvania Labor Relations Act.

Jurisdiction relinquished.