CHIEF JUSTICE SAYLOR, concurring I fully support the portions of the majority’s analysis centered on the incorporation of pension benefits into the collective bargaining agreement. I am also in full agreement with the majority that arbitral jurisdiction does not turn on whether a claim is derived from a statute, as that holding is consistent with the United States Supreme Court’s directive that a statutory right is arbitrable, as long as the provisions are clearly incorporated .into the CBA. See 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258, 129 S.Ct. 1456, 1465, 173 L.Ed.2d 398 (2009). I am uncomfortable, however, with the majority’s transposition of the specific terms of Act 111 explicitly pertaining to interest arbitration to the grievance arbitration process. See Majority Opinion, at 755 (likening the statute’s prescription for interest arbitration to the resolution of grievances). I believe that the extension of Act 111 and its accouterments to grievance arbitration is a product of’a non-textual construction of the statute developed in the case law. See, e.g., Betancourt, 540 Pa. at 76-78, 656 A.2d at 88-89.[1] Along these lines, I am circumspect about the majority’s assertion that “both Act 111 and the CBA provide that any disputes may be resolved through arbitration,” Majority Opinion, at 756 (emphasis added), since Act 111 itself says nothing about grievance arbitration. Left to my own devices, I would suggest that the present analysis would be clearer and more consistent with general arbitral principles if it centered more squarely on the collective bargaining agreement, which should be taken as defining the scope of the arbitrator’s jurisdiction (obviously subject to legal limitations). Cf. Port Auth. of Allegheny Cnty. v. Amalgamated Transit Union, Div. 85, 492 Pa. 494, 496-97, 424 A.2d 1299, 1300 (1981) (noting, in a case arising under the Arbitration Act of 1927, that “jurisdiction [is] defined by the parties’ collective bargaining agreement”).[2] Notably, this approach is consistent with the broader understanding of the jurisdictional assessment, which, as the majority recognizes, turns on whether the decision-maker in the adjudicatory process — whether it be an arbitrator or a court — acted in the general class of controversies that the law empowers it to consider. Where, as here, the parties include an arbitration clause in a CBA, it is that contract which authorizes the arbitrator to settle the dispute and, thus, the most rational source from which to delineate a grievance arbitrator’s jurisdiction is that agreement. Finally, I have a concern that the majority’s emphasis on Act 111 may be construed to limit arbitrators’ jurisdiction to terms and conditions of employment, even where a collective bargaining agreement’s substantive terms and dispute resolution procedures may contemplate a broader range of subjects. See, e.g., Majority Opinion, at 755-56 (emphasizing, as part of the dispositive analysis, that “the pension benefit was a specific term or condition of employment”). I do not regard this potential difficulty as merely conjectural, since there are a number of issues that could conceivably be encompassed within a collective bargaining agreement, but do not meet the definitional requirements for “terms and conditions of employment,” as set forth by courts. See, e.g. S. Park Twp. Police Ass’n v. Labor Relations Bd., 789 A.2d 874, 879 (Pa. Cmwlth. 2002) (holding that certain specific reporting requirements for officers are not terms and conditions of employment); Rose of Sharon Lodge No. 3 v. Pennsylvania Labor Relations Bd., 729 A.2d 1278, 1282 (Pa. Cmwlth. 1999) (holding that minimum requirements for promotion are not terms and conditions of employment); Int’l Ass’n of Fire Fighters, Local 669 v. City of Scranton, 59 Pa.Cmwlth. 235, 240, 429 A.2d 779, 782 (1981) (holding that the number of firefighters that a city must employ are not terms and conditions of employment). Nevertheless, because I agree with the majority that the relevant benefits here are rationally related to terms and conditions, the effect of that limitation need not be considered any further in this case. I merely note that an analysis more closely centered on the collective bargaining agreement would avoid this problematic implication. . Indeed, I have previously questioned such a formulation. See PSP v. PLRB, 570 Pa. 595, 606 n.6, 810 A.2d 1240, 1247 n.6 (2002). While I certainly recognize the line of cases that have endorsed a degree of overlap between grievance arbitration and Act 111—and do not question their precedential effect—I believe excessive reliance on that statute in the context of a contractually created grievance arbitration proceeding can be confusing. In my view, this Court’s decision in Chirico v. Bd. of Sup’rs for Newton Twp., 504 Pa. 71, 470 A.2d 470 (1983), which Betancourt relied upon and, as best I can tell, was the first instance of grievance - arbitration being examined through the lens of Act 111, is instructive in this respect. There, even as this- Court con-eluded that a dispute pertaining to the interpretation of an interest arbitration award fell “within the ambit of grievance arbitration" and was “properly handled within the framework of .., Act 111," id. at 78, 470 A.2d at 474, it foreshadowed the potential difficulty implicit in its holding: Act 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize a right ‘to a settlement of grievances or disputes’, while failing to provide any method for the implementation of those rights. , . Id. at 78-79, 470 A.2d at 474. . Applying contract-based principles of arbitration would also serve to address the City’s arguments concerning standing, to which the majority alludes. See Majority Opinion, at 753-54. Although ordinarily, only parties to a contract may avail themselves of its benefits, where an agreement confers benefits on a third party, that party may enforce it under a third-party beneficiary theory. Notably, when a party relies on this doctrine to seek enforcement of a provision that implicates an arbitration clause, the dispute must be submitted for arbitration, in accordance with the terms of the contract. See Johnson v. Pennsylvania Nat. Ins. Companies, 527 Pa. 504, 509, 594 A.2d 296, 299 (1991). Indeed, applying that precept in the context of a labor agreement, this Court has held that a claim involving an alleged third-party beneficiary to a CBA with an arbitral clause must be submitted for grievance arbitration by the union. See Falsetti v. Local Union No. 2026, United Mine Workers of Am., 400 Pa. 145, 167-68, 161 A.2d 882, 892-93 (1960); accord Ziccardi v. Commonwealth, 500 Pa. 326, 330, 456 A.2d 979, 981 (1982). Similarly, several federal appellate courts have also held that, by agreeing to a CBA that grants benefits on individuals who are not members of the collective bargaining unit, an employer assumes a contractual obligation relative to those third parties and, thus, the union has standing to bring a claim on their behalf. See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus v. Cookson Am., Inc., 710 F.3d 470, 474-75 (2d Cir. 2013); Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am., 440 F.3d 809, 817 (6th Cir. 2006); Int’l Ass’n of Machinists & Aerospace Workers Local Lodge 2121 v. Goodrich Corp., 410 F.3d 204, 212 (5th Cir. 2005); Rossetto v. Pabst Brewing Co., 128 F.3d 538, 540-42 (7th Cir. 1997).