**Jeffrey D. OLSON**

v.

**BOROUGH OF AVALON and Borough Council of Avalon, Appellants**

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 2002.

Decided Nov. 13, 2002.

Joseph E. Vogrin, III, Pittsburgh, for appellants.

Thomas B. Earhart, Pittsburgh, for appellee.

Before: COLINS, President Judge, and SMITH–RIBNER, PELLEGRINI, LEADBETTER, COHN, SIMPSON and LEAVITT, Judges.

PELLEGRINI, J.

The Borough of Avalon and the Borough Council of Avalon (collectively, the Borough) appeal from an order of the Court of Common Pleas of Allegheny County (trial court) directing that the case be remanded to the Borough Council to afford Jeffrey D. Olson (Olson) a post-termination hearing.

On January 2, 1996, Olson was appointed as a probationary police officer in the Borough of Avalon for one year pursuant to Section 1186 of The Borough Code [1] and the Borough of Avalon Civil Service Rules and Regulations.[2] Section 1186 of The Borough Code provides the following:

---

1. Act of February 1, 1966, P.L (1965) 1656, *as amended,* 53 P.S. § 46186.

2. Section 5.5 of these rules and regulations provides that any probationer who has been

All original appointments to any position in the police force or as paid operators of fire apparatus shall be for a probationary period of not less than six months, and not more than one year, but during the probationary period an appointee may be dismissed only for a cause specified in section 1183 of this act [53 P.S. § 46183]. If at the close of a probationary period the conduct of fitness of the probationer has not been satisfactory to the council, the probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease; otherwise his retention shall be equivalent to a permanent appointment.

On December 6, 1996, the police chief wrote a letter to the Borough Council recommending that Olson not be given a permanent police officer position.[3] On December 11, 1996, the Borough Solicitor advised Olson by letter that the police chief had recommended that he not receive a permanent position on the police force. The letter specified the reasons for Olson's rejection and explained that the Borough Council had scheduled a public hearing on December 27, 1996, to determine whether his conduct or fitness was satisfactory. The letter also provided, among other things, that if, after the hearing, the Borough Council decided Olson was not qualified for a permanent appointment, he would be notified in writing that he would not receive a permanent appointment and his tenure as a police officer would cease. The Borough Council then held a hearing on December 27th to determine whether Olson should be retained as a permanent police officer. At the hearing, Olson testified on his own behalf and was able to present direct testimony and to cross-examine the opposing parties' witnesses.

On December 30, 1996, the Borough Council determined that Olson's conduct was not satisfactory and that he was unqualified to receive a permanent appointment to the Borough of Avalon police department based on his lack of fitness and conduct unbecoming an officer. In its decision, the Borough Council concluded that "[t]he Borough of Avalon cannot afford to appoint a probationary officer to a permanent appointment on the police department

---

notified in writing that he is not to obtain a permanent appointment is without a right of appeal.

3. In support of his recommendation that Olson not receive a permanent appointment, the police chief set forth the following reasons:

On June 2, 1996, the Borough Manager witnessed an incident in which Officer Olson exhibited behavior unbecoming an officer on Elizabeth Avenue in which during a domestic incident, he began yelling and screaming and ranting and raving out of control during an otherwise unnoteworthy event. His conduct, as described by Ms. Welsh, was a disgrace both to his badge and his Borough of Avalon uniform and was an embarrassment to the Borough Manager.

A second incident occurred this past weekend in which Officer Olson again exhibited behavior unbecoming an officer at the police station when he needlessly taunted and goaded a female so he could possibly arrest her while she was attempting to have a male friend released from custody. Officers in Avalon do not taunt or goad citizens. This behavior was witnessed by two witnesses who were embarrassed to be present during such conduct.

Actions such as the above are not infrequent. Other officers of this department as well as officers of other police departments have witnessed similar conduct by Officer Olson. These officers have informed me that Officer Olson needlessly instigates citizens to such an extent that these officers either refuse to work with Officer Olson or have informed me that they will refuse to 'back him up'.

This probationary officer is unqualified for a permanent appointment to the police department based upon his own conduct and behavior.

whose co-workers describe [sic] as a 'lawsuit waiting to happen' because the probationer does not control his temper." (Conclusion of Law No. 23, Borough Council decision dated December 30, 1996.) In its order, the Borough Council directed that "the probationer shall be notified in writing that he shall not receive a permanent appointment to the Borough of Avalon Police Department and his employment shall end immediately." Olson filed an appeal with the trial court which issued an order dated June 2, 1997, determining that the record was not sufficient for review and remanded the case to afford Olson a post-termination hearing, citing *Elmer v. Board of Commissioners of Wilkins Township*, 122 Pa.Cmwlth. 516, 552 A.2d 745 (1989), as the basis for doing so. This appeal by the Borough followed.[4]

■■■ The Borough contends that the trial court erred by relying on *Elmer* to conclude that Olson had a right to a post-termination hearing. In *Elmer*, the employee was hired as a police officer but was placed on probation for one year pursuant to Section 640 of the First Class Township Code,[5] which is virtually identical to Section 1186 of The Borough Code. The police chief recommended that he not be retained and the board of commissioners voted not to retain him. After he was informed of this decision, he requested a hearing which he received over two months after his dismissal. After the hearing, the board dismissed his appeal. He appealed to this Court, arguing that his due process rights were violated when he was denied a pre-termination hearing. We disagreed, holding that under the First Class Township Code, all that the board had to show was that it found the probationer's conduct or fitness as a probationary employee to be unsatisfactory without citing specific instances evidencing a lack of fitness. We further held that his due process rights were not violated by failing to conduct a pre-termination hearing because of his limited property interest in employment stating:

> As noted above, probationary employees do not enjoy the same job security or guarantee of continued employment as that enjoyed by tenured or permanent status employees. [Citation omitted.] Thus, we conclude that *Loudermill*[6]

---

4. This case is appealable under Pa. R.A.P. 311(f)(2) which provides: "An appeal may be taken as of right from: ... (2) an order of a common pleas court or government unit remanding a matter to an administrative agency or hearing officer that decides an issue which would ultimately evade appellate review if an immediate appeal is not allowed." *See Philadelphia Commission on Human Relations v. Gold*, 95 Pa.Cmwlth. 76, 503 A.2d 1120 (1986).

5. Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. § 55640. That section provides:

   > All original appointments to any position in the police force or as paid operators of fire apparatus shall be for a probationary period of not less than six months and not more than one year, but during the probationary period an appointee may be dismissed only for a cause specified in section 637 of this subdivision. If at the close of a probation-

ary period the conduct or fitness of the probationer has not been satisfactory to the township commissioners, the probationer shall be notified in writing that he will not receive a permanent appointment. Thereupon, his appointment shall cease; otherwise, his retention shall be equivalent to a permanent appointment.

6. In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that two public employees who had a property right in continued employment were entitled to pre-termination hearings under due process even though they would receive post-termination hearings required under Ohio state law. Under *Loudermill*, only minimal due process is required and does not require a trial type proceeding. *See, e.g., Firman v. Department of State, State Board of Medicine*, 697 A.2d 291 (Pa.Cmwlth.

does not mandate a pre-termination hearing in this case. Appellant was provided with notice of the Board's decision as well as the opportunity for a post-termination hearing. Given the limited property interest in employment which a probationary employee possesses, the procedure followed in this case adequately protected that interest.

Because we held that a pre-termination hearing was not required, the trial court understood that to mean that even if a pre-termination hearing was held, a post-termination hearing was required for a probationary employee.

Underlying our holding in *Elmer* was our decision in *Roth v. Borough of Verona,* 74 Pa.Cmwlth. 352, 460 A.2d 379 (1983). In that case, we concluded that a probationary borough police officer had a property right in his employment, and borough council's vote to reject him as a permanent police officer amounted to an invalid adjudication because he was not given reasonable notice and an opportunity to be heard. In determining that Roth had a property interest in his employment, we relied upon Section 1186 of the Code stating:

> Although we have determined that Appellant continued as a probationary employee until his dismissal, we observe

that the Code does not grant total discretion to the Council to deny permanent status to probationary appointees. Under Section 1186 of the Code, a permanent appointment may be denied only where "the conduct of fitness of the probationer has not been satisfactory to the council." We think that this statutory limitation on the Council's power to refuse a permanent appointment is sufficient to confer on Appellant a property right in his employment.

*Id.* at 383.

The Borough, however, contends that *Elmer* does not require that a post-termination hearing be held when a pre-termination hearing has been held and, in any event, both *Elmer* and *Roth* have been implicitly overruled by our Supreme Court in *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000), *Short v. Borough of Lawrenceville,* 548 Pa. 265, 696 A.2d 1158 (1997), and *Pipkin v. Pennsylvania State Police,* 548 Pa. 1, 693 A.2d 190 (1997). It argues that those cases hold that there is no personal or property right to continued employment, and, as such, the Borough's decision to terminate him was not an adjudication subject to appeal.[7]

1997), *petition for allowance of appeal denied,* 550 Pa. 722, 706 A.2d 1215 (1998) (nurse whose license was suspended without hearing was accorded due process under *Loudermill* because statute required automatic suspension for conviction of a felony and she was afforded notice of State Board's petition for automatic suspension and had opportunity to respond); *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5,* 132 Pa.Cmwlth. 352, 572 A.2d 1298 (1990), *petition for allowance of appeal denied,* 527 Pa. 626, 592 A.2d 46 (1991) (police officer who was terminated due to criminal activity received sufficient due process under *Loudermill* when prior to his dismissal, he was notified of charges against him and given opportunity to rebut but chose not to respond).

7. An adjudication is defined in Section 101 of the Local Agency Law, 2 Pa.C.S. § 101, as follows:

> Any final order, decree, decision, determination nor ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made...

If a property right were involved, a probationary employee would have a right to appeal under Section 553 of the Local Agency Law, 2 Pa.C.S. § 553, which requires a hearing when an adjudication has been issued.

In *Upper Makefield*, a case also involving a probationary police officer who was terminated, our Supreme Court was asked to decide whether Act 111 [8] mandated the binding arbitration of grievances where the grievance procedure set forth in the parties' collective bargaining agreement did not require arbitration. The Court determined that it did not need to address that issue because the police officer was an at will employee and not entitled to appeal his dismissal unless the terms of his probationary period specifically granted him an avenue of redress which it did not. It explained:

The very notion of probationary employment sets those employees apart from the others, signaling that they are new, newly transferred or newly promoted and that they must prove themselves in the new position before being considered permanently employed therein. *See* Black's Law Dictionary 1202 (6th ed.1990); Websters Third New International Dictionary 1806 (1993). Implicit in the term "probationary" is that the employee is being tested or evaluated on the job. The time limit signals that the evaluation period will not last forever before a decision is made pursuant to which the employee will either be retained and thereby vested with the full rights and responsibilities of the nonprobationary employee or will be terminated, having not completed the probationary period satisfactorily. As this creates a strictly "at will" relationship between the employer and employee during the probationary period, a probationary employee is not entitled to register a grievance should he or she not be retained past the probationary period.

This is what distinguishes those police and firemen who come within the ambit of Act 111 protections and those who do not. Those officers covered by the umbrella of Act 111 have passed their probationary period satisfactorily and assume a status protected by the right to bargain collectively and to have their grievances heard. Unless the terms of an officer's probationary period specifically grant him avenues of redress, the relationship is strictly at will and terminable by either side for the duration of the probationary period.

*Id.* at 117–118, 753 A.2d at 806. Our Supreme Court further noted that Section 2 of the Police Tenure Act [9] set forth the circumstances under which a full time police officer could be removed from office, and that section specifically excluded probationary officers from those protections.

While *Short* does not deal with a probationary employee, it does address generally the rights of an at-will employee regarding a hearing upon termination. *Short* involved a secretary/treasurer who was considered an at-will employee and was discharged without notice from her employment after three years of service with the borough. Although she requested a hearing, the borough denied her request, finding that she did not have a guaranteed right to continued employment. On appeal, we reversed, finding that the employee manual gave her a reasonable expectation that dismissal could occur only after a due process hearing. The borough appealed and our Supreme Court reversed our decision explaining that a local agency employee was entitled to a post-termination

---

8. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 confers the right to collective bargaining on police and firefighters but denies them the right to strike

because of the crucial services they provide. *Upper Makefield*.

9. Act of June 15, 1951, P.L. 586, *as amended*, 53 P.S. § 812.

hearing under the Local Agency Law[10] only if the employee could show that his or her discharge affected a personal or property right which existed. when the employee was able to demonstrate "a legitimate expectation of continued employment through either contract or statute." *Id.*, 548 Pa. at 267, 696 A.2d at 1159. Because Short had no guarantee of continued employment by contract or statute and the employee handbook did not contract away the borough's right to discharge her, the Court held that she was not entitled to a hearing regarding her dismissal from her position of borough secretary/treasurer.

*Pipkin* is more similar to this case because it involves a probationary employee and Section 205(f) of The Administrative Code of 1929,[11] which is a provision similar to Section 1186 of the Borough Code. Section 205(f) of The Administrative Code of 1929 provides:

All new cadets and troopers shall serve a probationary period of eighteen months from date of original enlistment, during which time they may be dismissed by the Commissioner for violations of rules and regulations, incompetency, and inefficiency **without action of a court martial board or the right of appeal to a civil court.** (Emphasis added.)

There is a difference between that language and Section 1186 of the Borough Code in that the Administrative Code provision specifically contains language that a decision not to appoint a probationary employee to a permanent employee is not subject to an appeal.

Instead of relying on that language, though, our Supreme Court centered its discussion on the nature of probationary employment by holding that Section 205(f)

did not confer upon a probationary state trooper a property right in continued employment stating:

By definition, a probationary period is one in which a new, transferred, or promoted employee must prove or show that he is capable of performing the required duties of the job or position before he will be considered permanently employed in such a position. [Citations omitted.] Thus, the use of the term probationary period by the General Assembly indicates an intention that a probationary state trooper like appellant does not have an expectation of continued employment until he successfully completes his initial eighteen month period of employment.

Moreover, appellant's reliance on Section 205(f) providing him with a property right. fails because Section 205(f) explicitly provides that the Commission can dismiss a probationary state trooper for "violations of rules or regulations, incompetency and inefficiency without action of a court martial board or the right to appeal to a civil court." As recognized by the United States Court of Appeals for the Third Circuit, the procedural protections afforded to a category of person sheds light on the legislature's intention in conferring a property right on those people. *Blanding v. Pennsylvania State Police*, 12 F.3d 1303, 1306 n. 2 (3d Cir.1993). If no review of the decision to discharge an employee is permitted, then there is an indication that the decision to discharge has been committed to the discretion of the employer and that the employee has no property right in continued employment. *Id.*

*Id.* at 8, 693 A.2d at 193. The Court then affirmed this Court's *per curiam* order

---

**10.** 2 Pa.C.S. §§ 551–555; 751–754.

**11.** Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 65(f).

dismissing the appeal for lack of jurisdiction, explaining that Pipkin's "dismissal as a probationary state trooper did not constitute an adjudication because he has failed to demonstrate sufficient facts to establish a property right or privilege in his continued employment." *Id.* at 10, 693 A.2d at 194.

The issue then becomes whether the language contained in Section 205(f) of the Administrative Code supporting the decision not to appoint the state trooper to a permanent position makes *Pipkin's* holding that probationary police officers have no property interest in continued employment inapplicable to this case because Section 1186 of the Borough Code does not contain similar language.

■ Constitutionally, whether a person is entitled to an appeal is not determined by language in a statute stating that an appeal cannot be taken, but on whether the statute confers a property right on an individual. For example, if a statute would take away a license granted to an individual, any provision that the revocation could not be appealed would be unconstitutional because it would deprive a person of his or her property without due process. That is why our Supreme Court's analysis in *Pipkin* centered on whether the language in Section 205(f) gave any property right to a probationary state trooper to continued employment and held that it did not. Because the relevant language of Section 205(f) of the Administrative Code upon which our Supreme Court relied in holding that no property rights attached to a dismissed probationary employee provided that a probationer could only be denied appointment for "violations of rules and regulations, incompetency, and inefficiency," cer-

tainly no property right could be conferred upon a probationary employee under Section 1186 of the Borough Code which only provides that a probationary police officer can be dismissed "if the conduct of fitness of the probationer has not been satisfactory to the council." Because *Pipkin* has implicitly overturned *Roth* and *Elmer,* and we do so explicitly, Olson had no property right in continued employment conferred on him by Section 1186 of the Borough Code, he was not entitled to a pre- or post-termination hearing, and the Borough's decision to dismiss him was not an adjudication subject to appeal. Therefore, the trial court lacked jurisdiction to hear the matter, and the trial court erred in ordering a post-termination hearing.[12]

Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, this 13th day of November, 2002, the order of the Court of Common Pleas of Allegheny County, dated June 2, 1997, is reversed.

---

12. Even if Olson had a right to a due process hearing, because he did, in fact, receive a full-blown trial-type of pre-termination hearing, he would not have been entitled to a post-deprivation hearing under the Local Agency Law.