## BOROUGH OF JENKINTOWN

v.

### Stephen HALL and the Police Bargaining Unit of the Police Department of Jenkintown

### Appeal of: Stephen Hall.

Commonwealth Court of Pennsylvania.

Argued June 11, 2007.

Decided July 31, 2007.

Blake E. Dunbar, Jr., Blue Bell, for appellants.

Richard J. DeFortuna, Philadelphia, for appellee.

BEFORE: LEADBETTER, President Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Stephen Hall and his union, the Police Bargaining Unit of the Police Department of Jenkintown, appeal an order of the Court of Common Pleas of Montgomery County vacating an Act 111 arbitration award. The trial court found that the

arbitrator lacked jurisdiction to make Hall, a probationary police officer, a permanent employee of the Jenkintown Police Department. In this case, we consider the circumstances under which a court's review of an arbitrator's decision on jurisdiction is plenary, as opposed to deferential.

This appeal arose from a grievance filed by Hall, who was hired by the Borough of Jenkintown on January 26, 2004, subject to a twelve-month period of probation. On January 25, 2005, Hall was notified in writing by the Borough Council that he would not receive a permanent appointment to the police force because his "fitness and conduct" during probation had not been satisfactory to Council. Reproduced Record at R–9, R–66 (R.R. ——). On January 27, 2005, Hall filed a grievance protesting the Council's decision.

. Hall's grievance was denied by the Borough Police Chief and transferred to the Borough Mayor for consideration. When the Mayor did not respond, Hall filed a grievance with the Borough Council. The Council denied the grievance on March 11, 2005, stating that it had reexamined Hall's performance during his probationary period and, again, had decided not to appoint him to a permanent position. In response, Hall requested an arbitration before a neutral arbitrator, and a hearing was conducted on June 7, 2005.

At the outset of the hearing, the Borough asserted that Hall's probationary status did not give him any right to grieve his separation under the collective bargaining agreement. It explained as follows:

> It is the position of Jenkintown Borough that the grievant's rights in this matter are controlled by Section 1186 of the Borough Code, and by the Commonwealth Court case of *Olson v. Borough of Avalon* . . . .

Furthermore, it is the position of Jenkintown that a probationary police officer has no property right conferred on him by Section 1186 of the Borough Code in continued employment.

> In addition, the Collective Bargaining Agreement between the Borough and the police officer confers no rights upon the grievant because the action of Borough Council in terminating the grievant does not come within the definition of a grievance set forth in Section 18 of the collective bargaining agreement.

> No disciplinary action was taken, so there can be no examination of whether or not Mr. Hall violated any disciplinary rules. It is a matter simply of Borough Council being dissatisfied with his conduct as a probationer.

R.R. R–25–R–26. The Borough maintained that the only issue to be resolved in the arbitration was whether the arbitrator had jurisdiction to consider Hall's grievance. Alternatively, the Borough maintained that its only burden was to show that it complied with the requirements of The Borough Code [1] with respect to probationary police officers. In support, the Borough submitted documentary evidence demonstrating that the Council found Hall's performance did not meet its performance expectations.

The arbitrator sustained Hall's grievance and ordered his reinstatement. She concluded that the Borough failed to produce evidence of just cause to discipline Hall, and she rejected the Borough's claim that Hall's grievance was not arbitrable. She reasoned that because the current collective bargaining agreement did not specifically prohibit probationary officers from filing a grievance, as had prior collective bargaining agreements, it must have intended to allow probationary officers to

---

1. Act of February 1, 1996, P.L. (1965) 1656,     *as amended,* 53 P.S. §§ 45101–48501.

grieve their dismissal at the conclusion of their probationary period.

The Borough petitioned the trial court to vacate the arbitration award, asserting that the arbitrator lacked jurisdiction or, alternatively, exceeded her authority as an arbitrator. The trial court vacated the arbitrator's award for lack of jurisdiction.

To reach this conclusion, the trial court held that neither The Borough Code nor the relevant collective bargaining agreement gave Hall, an at-will employee by virtue of his probationary status, the right to grieve the Borough's decision not to offer him permanent employment. The trial court rejected the arbitrator's use of expired collective bargaining agreements to find support for her conclusion that Hall had a contractual right to grieve. The trial court explained that the correct test is whether the current collective bargaining agreement specifically confers this right upon probationary employees. Finding no such language in the applicable collective bargaining agreement, the trial court held the arbitrator lacked jurisdiction and vacated the award.

■ On appeal, Hall contends that the trial court erred. First, Hall argues that in reaching its decision on jurisdiction, the trial court failed to give extreme deference to the arbitrator's interpretation of the collective bargaining agreement, as is required under the narrow *certiorari* scope of review. Second, Hall asserts that the trial court erred by overlooking the findings of fact made by the arbitrator.

■ A central issue in this case is the scope and standard of this Court's review of the trial court's conclusion that the arbitrator lacked jurisdiction. Both parties agree that because this is an Act 111 case, the review of an arbitrator's award is narrow *certiorari*.[2] This limits courts to reviewing (1) the jurisdiction of the arbitrator; (2) the regularity of the arbitration proceeding; (3) whether the arbitrator exceeded her authority; and (4) whether the arbitrator deprived one of the parties of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 540 Pa. 66, 79, 656 A.2d 83, 89–90 (1995). The trial court followed the narrow *certiorari* scope of review in that it limited its review to whether the arbitrator had jurisdiction. However, this does not end the inquiry because the next question is the scope of judicial review of the arbitrator's decision on jurisdiction. The Borough claims that on jurisdiction, as on all pure questions of law, the court's review is plenary. Hall argues that the arbitrator's decision on jurisdiction must be affirmed, even if the court believes it to be legally wrong, if the award draws its essence from the collective bargaining agreement.

In *Town of McCandless v. McCandless Police Officers Association*, 587 Pa. 525, 901 A.2d 991 (2006), our Supreme Court reviewed this Court's holding that a "dual standard" should be applied when a court reviews an arbitrator's decision on jurisdiction. Under this "dual standard," a court's review of a pure question of law is plenary. On the other hand, where resolution of the issue of jurisdiction requires fact-finding or contract interpretation, the court's review of the arbitrator's decision should be one of extreme deference. In considering this so-called dual standard, the Supreme Court held that, generally, in an Act 111 case, a court should *not* defer to an arbi-

---

**2.** As will be shown in our discussion below, probationary police officers are not covered by Act 111. Accordingly, this may not be a narrow *certiorari* case. However, the Bor- ough did not raise this issue, and we review the arbitrator's award under narrow *certiorari* review.

trator on jurisdiction. It reasoned as follows:

> Preliminarily, we do not think that the question of the governing scope and standard of review is as straightforward as the parties and the Commonwealth Court panel majority would have it. Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by *narrow* certiorari, thus allowing for non-deferential review—unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA.... In other words, in the absence of the noted caveat, *there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed,* whether the proceedings were regular, whether there was an excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.

*Id.* at 540–541, 901 A.2d at 1000–1001 (emphasis added) (footnote and citations omitted).

Thus, *McCandless* teaches that although there is "no reason in law or logic" to defer to the arbitrator on the question of jurisdiction, there is a "noted caveat" to this principle. This caveat provides that if resolving the question of jurisdiction *"depended* to some extent upon arbitral fact-finding or a construction of the relevant CBA," then the Court's review is not plenary. *Id.* (emphasis added).

We do not find the "noted caveat" to be applicable here. To be sure, the arbitrator made findings of fact, and she purported to construe the collective bargaining agreement. However, as will be shown in our discussion on the merits of the trial court's holding, neither exercise of the arbitrator

was essential to a resolution of the jurisdictional question. The question of the arbitrator's jurisdiction to hear Hall's grievance was a pure question of law and, thus, judicial review of the arbitrator's decision is plenary.

We turn to a review of the law governing the rights of probationary police officers. Section 1186 of The Borough Code, 53 P.S. § 46186, requires that all appointments to a police force be subject to a period of probation. It states as follows:

> All original appointments to any position in the police force or as paid operators of fire apparatus shall be for a probationary period of not less than six months, and not more than one year, but during the probationary period an appointee may be dismissed only for a cause specified in section 1183 of this act. *If at the close of a probationary period the conduct of fitness of the probationer has not been satisfactory to the council, the probationer shall be notified in writing that he will not receive a permanent appointment.* Thereupon, his appointment shall cease; otherwise his retention shall be equivalent to a permanent appointment.

53 P.S. § 46186 (emphasis added). At the end of the probationary period, the officer may be retained as a permanent employee if his performance is satisfactory. If not, the council must give him written notice of that fact; however, the case law has established that the probationary officer is not also entitled to a hearing on the council's decision.

In *Upper Makefield Township v. Pennsylvania Labor Relations Board,* 562 Pa. 113, 753 A.2d 803 (2000), our Supreme Court held that probationary police officers are not protected by Act 111 and, thus, do not have a right to have their

grievances heard.[3] In *Upper Makefield,* the Pennsylvania Labor Relations Board had ordered the township to arbitrate the dismissal of a probationary officer, and the Supreme Court reversed. It explained its reversal as follows:

> [A] probationary employee is being tested or evaluated on the job. The time limit signals that the evaluation period will not last forever before a decision is made pursuant to which the employee will either be retained and thereby vested with the full rights and responsibilities of the non-probationary employee or will be terminated, having not completed the probationary period satisfactorily. As this creates a strictly "at will" relationship between the employer and employee during the probationary period, a probationary employee is not entitled to register a grievance should he or she not be retained past the probationary period.
>
> \* \* \*
>
> *Those officers covered by the umbrella of Act 111 have passed their probationary period satisfactorily and assume a status protected by the right to bargain collectively and to have their grievances heard.* Unless the terms of an officer's probationary period specifically grant him avenues of redress, the relationship is strictly at will and terminable by either side for the duration of the probationary period.

*Id.* at 118, 753 A.2d at 806 (emphasis added). The Supreme Court concluded that absent language in a collective bargaining agreement that "would refute the at-will status of probationary officers," the statute under which the probationary officers were hired, such as The Borough Code, governs and not Act 111. *Id.*

Following *Upper Makefield,* this Court held that the Commonwealth could unilaterally stop giving hearings to probationary state troopers upon their dismissal because they were not entitled to such hearings. *Pennsylvania State Police v. Pennsylvania Labor Relations Board,* 764 A.2d 92 (Pa.Cmwlth.2000), *aff'd per curiam,* 570 Pa. 595, 810 A.2d 1240 (2002). We so held because even though the applicable collective bargaining agreement in question covered probationary troopers, it did not "specifically" grant them hearings to challenge the termination of their at-will employment during the probationary period. We explained that

> a probationary police officer is not entitled to appeal his dismissal as *the protections of Act 111 cover only those who have satisfactorily passed their probationary period.* Unless the terms of an officer's probationary period *specifically* grant him avenues of redress, the relationship is terminable by either side during the probationary period.

*Id.* at 95. Our Supreme Court recently reaffirmed this principle in *Gehring v. Pennsylvania Labor Relations Board,* 591 Pa. 574, 920 A.2d 181 (2007). There the Court held:

> Consistent with *Upper Makefield's* underlying intent, we do not read Act 111 as extending an independent right to probationary employees to grieve with regard to such decisions—*termination restrictions and grievance procedures available under a collective bargaining agreement may extend to probationary officers only upon explicit prescription.*

---

**3.** Hall believes that *Upper Makefield* is not dispositive because the present appeal arose from the vacating of an arbitration award as opposed to an unfair labor charge adjudica-tion. This procedural difference is of no moment, however, with respect to the substantive principles of law established in *Upper Makefield.*

*Id.* at 581, 920 A.2d at 185 (emphasis added).

■ In sum, a probationary police officer does not have the right to challenge the decision of a borough council "that he will not receive a permanent appointment." Section 1186 of the Borough Code, 53 P.S. § 46186. A probationary officer does not have rights under Act 111, and he may not obtain a review of a borough council's decision under the Local Agency Law. *Olson v. Borough of Avalon,* 811 A.2d 66, 73 (Pa. Cmwlth.2002).[4]

■ Nevertheless, a borough can elect to give a probationary officer the right to challenge the borough council's decision not to permanently appoint him to the police force. To do so, the terms of a probationary police officer's employment must "specifically grant him [an] avenue of redress." *Upper Makefield,* 562 Pa. at 118, 753 A.2d at 806. The "specific" grant of redress requires the use of words that will "refute the at-will status of probationary officers." *Id.* If anything, the Supreme Court has heightened the burden for probationary officers claiming Act 111 rights by stating that the relevant collective bargaining agreement contain an "explicit," not just a "specific" prescription. *Gehring,* 591 Pa. at 581, 920 A.2d at 185. To determine whether Hall had a contractual right to grieve the refusal of the Borough to appoint him to a permanent position, the arbitrator had to examine the four corners of the collective bargaining agreement to see whether such a right was granted by specific, or explicit, contractual language.

The operative provision in the collective bargaining agreement is Paragraph 18, entitled "Grievance Procedure." It states as follows:

18. GRIEVANCE PROCEDURE

Definitions:

1. A grievance shall be defined as any dispute between the police and the employer concerning the interpretation, application or claimed violation of any of the express provisions of this agreement, including whether a Police Officer is entitled to benefits pursuant to the Heart and Lung Act, or whether any disciplinary action is warranted under "just cause" standard.

2. A grievant shall be defined as an Officer, alone, or accompanied and/or represented by a bargaining unit representative.

R.R. R–58–R–59. Paragraph 18 recites the right of all permanent police officers, established in Act 111, to arbitrate "any dispute" with their employer, including a dispute on the interpretation of the collective bargaining agreement.

■ However, as this Court stated in *Township of Sugarloaf v. Bowling,* 722 A.2d 246, 248 (Pa.Cmwlth.1998), "absent *specific* language in the collective bargaining agreement itself to that effect, or other specific contractual or legislative requirements, a probationary officer is *not* subject to the protections of a collective bargaining agreement." (emphasis original). Paragraph 18 does not have "specific language" that a "police officer" includes those on probation; it does not refute the at-will

4. *Olson* established that a borough does not have to give a probationary officer a hearing on its decision under the Local Agency Law. We explained that a probationary employee has "no property right in continued employment" and is "not entitled to a pre or post-termination hearing, and the Borough's deci-

sion to dismiss him [is] not an adjudication subject to appeal." *Olson,* 811 A.2d at 73. It is the absence of a property right that bars a probationary officer from using the platform of the Local Agency Law to challenge a borough's decision not to give him permanent employment.

status of probationary police officers; and it does not specify that probationary police officers have an avenue of redress to challenge the Borough Council's decision not to permanently appoint them to the police force. There is one conclusion: Hall was not entitled "to the protections" of Paragraph 18 of the collective bargaining agreement.

The arbitrator did not apply the principles of *Upper Makefield* to the collective bargaining agreement. Instead, she examined the grievance provisions from the 1998, 1999, 2000 and 2001, collective bargaining agreements, wherein paragraph 18 read as follows:

> The Grievance Procedure hereinafter set forth shall apply only to interpretation of this contract and the application and interpretation of duly promulgated department rules, regulations and policies relating to these items. Grievances regarding disciplinary matters covered by Civil Service and pertaining to suspension, demotion and/or termination shall be addressed, as required by the Borough Code, through Civil Service Appeal. *Probationary Officers shall not have the right to grieve under this contract.*

R.R. R–85 (emphasis added). The absence of this above-quoted exclusion from the current contract led the arbitrator to conclude that the drafters of the agreement intended to include probationary officers. There are several problems with the arbitrator's exercise in contract interpretation.

First, the arbitrator's examination of expired contracts yielded no meaningful information. The specific exclusion that appeared in previous agreements may have been appropriate in their day, but after *Upper Makefield* and *Pennsylvania State Police* this exclusionary language became unnecessary. These cases established the principle that probationary officers have no right to employ a grievance process absent *specific* language in the collective bargaining agreement conferring grievance rights upon these "at will" employees. *See also Gehring,* 591 Pa. at 581, 920 A.2d at 185 (requiring "explicit prescription" of Act 111 grievance rights for probationary employees in applicable collective bargaining agreement).

Indeed, this Court's holding in *Pennsylvania State Police,* which was affirmed *per curiam,* underscores the arbitrator's mistake. In that case, the collective bargaining agreement specifically included probationary state troopers as members of the bargaining unit with respect to wages and other conditions of employment. Nevertheless, this Court held that mere inclusion in a bargaining unit was not enough to refute the at-will status of the probationary employees. The agreement did not contain the specificity required to confer hearing rights on at-will, probationary employees. Here, the relevant collective bargaining agreement does not even mention probationary officers; *a fortiori,* the agreement fails to refute the at-will employment status of probationary officers.

Second, the arbitrator's task was to examine the "relevant" collective bargaining agreement, *i.e.,* the one in effect during Hall's probation. *McCandless,* 587 Pa. at 540, 901 A.2d at 1000. This is the agreement that, under *Upper Makefield,* needed to include specific language giving Hall grievance rights and refuting his status as an at-will employee. However, as noted, the current collective bargaining agreement is dead silent on probationary officers. From silence, one cannot infer a specific intent to effect a change in Hall's status from an at-will employee to one with

grievance rights.[5]

The arbitrator erred in her conclusion that she had jurisdiction. Although she presented her analysis as one of contract interpretation, she looked at the wrong contract. To determine whether the "relevant" collective bargaining agreement gave Hall the right to grieve was a simple, straightforward exercise and did not require examination of other, non-relevant collective bargaining agreements. The trial court did not have to give the arbitrator "extreme deference" but even if it had, the result would be the same. This is because the arbitrator's so-called interpretation of the relevant collective bargaining agreement did not draw its essence from the relevant collective bargaining agreement.[6]

Similarly, the arbitrator's decision did not depend on any findings of fact made by the arbitrator. Here, the arbitrator found, as fact, that the Borough had participated in the grievance procedure, and from these facts she concluded that the Borough had waived its right to challenge the arbitrator's jurisdiction. Before this Court, Hall does not argue that the Borough waived the issue of jurisdiction, apparently accepting the trial court's conclusion that subject matter jurisdiction is never waived.[7] However, Hall contends that the arbitrator's

fact-finding supports the conclusion that Hall's grievance was arbitrable. We disagree.

By making factual findings that the Borough participated in Hall's grievance, the arbitrator engaged in a pointless exercise because the Borough never contested its participation. The Borough explained at the outset of the arbitration proceedings why it was participating and the ruling it hoped to obtain, *i.e.*, that the arbitrator lacked jurisdiction. Further, the fact that the Police Chief referred Hall to the Mayor does not, as Hall argues, support the conclusion that the collective bargaining agreement gave Hall the right to grieve his dismissal.

The Police Chief could not bind the Borough to his interpretation of the collective bargaining agreement, even were we to accept Hall's premise that referring Hall's grievance to the next step was an admission of some sort. In any case, the Police Chief's referral to the Mayor was, at best, ambiguous. The Police Chief may have done so with the belief that the grievance procedure was appropriate, but only to determine jurisdiction in accordance with *Sugarloaf*. In short, the arbitrator's fact-finding on the Borough's conduct was irrelevant to the question of the arbitrator's

---

**5.** Prior practice may be a guide in labor disputes, and in this case, the prior practice was consistent: probationary officers never enjoyed grievance rights under any collective bargaining agreement between the Union and the Borough. Indeed, to institute a change from the prior practice is another reason why express language to effect this result was needed in the relevant collective bargaining agreement.

**6.** Because we affirm, we need not consider the Borough's alternate ground for vacating the award, *i.e.*, that the arbitrator exceeded her authority. Under The Borough Code only the Borough Council, not an arbitrator, decides if a probationary officer will receive a permanent appointment.

**7.** The trial court rejected the arbitrator's waiver decision for two reasons. First, subject matter jurisdiction is never waived; a court may raise the issue *sua sponte*. *West Mifflin Area School District v. Board of Property Assessment Appeals*, 844 A.2d 602, 605 n. 3 (Pa.Cmwlth.2004). Second, the Borough had no choice but to use the arbitration proceeding as the exclusive forum for challenging an arbitrator's jurisdiction. *Township of Sugarloaf v. Bowling*, 563 Pa. 237, 759 A.2d 913 (2000) (holding that a municipality must arbitrate the question of whether a grievance is arbitrable, not bring the question to a court of law).

jurisdiction, and it did not change judicial review of the arbitrator's award from plenary to deferential.

In conclusion, we hold that the arbitrator lacked jurisdiction to hear Hall's grievance that he should have been given a permanent position as a police officer. We further hold that our review of the arbitrator's decision on jurisdiction is plenary, not deferential, because the jurisdictional question was purely one of law. The arbitrator's contract "interpretation," did not change the scope of review because the jurisdictional issue did not "depend" on contract interpretation. *McCandless*, 587 Pa. at 540, 901 A.2d at 1000. Contract interpretation does not mean simply reading a collective bargaining agreement. If it did, then a court's review of an arbitrator's decision on jurisdiction would never be plenary. We do not believe this is the rule our Supreme Court intended to establish when it said "[g]enerally speaking, a plenary standard of review should govern the preliminary determination ... [of] the arbitrator on questions of whether jurisdiction existed." *McCandless*, 587 Pa. at 540, 901 A.2d at 1000–1001.

For these reasons, we affirm the trial court.

## ORDER

AND NOW, this 31st day of July, 2007, the order of Court of Common Pleas of Montgomery County dated May 8, 2006, in the above captioned matter is hereby AFFIRMED.