IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre,            :
              Appellant        :
                                 :
         v.                   :   No. 2170 C.D. 2015
                                 :   Argued:  May 12, 2016
Fire Fighters Local Union    :
No. 104                         :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY PRESIDENT JUDGE LEAVITT               FILED: July 20, 2016

       The City of Wilkes-Barre (City) appeals an order of the Court of Common Pleas of Luzerne County (trial court), which denied the City's request to vacate a grievance arbitration award in favor of Fire Fighters Local Union No. 104 (Union). The arbitrator concluded that the City's effort to assign a case manager to monitor the Heart and Lung Act[1] benefits paid to a firefighter was not authorized by the parties' collective bargaining agreement (CBA) and, thus, sustained the

---

[1] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638. Section 1 of the Heart and Lung Act provides:

> [A]ny policeman, fireman or park guard of any county, city, borough, town or township, or any sheriff or deputy sheriff who is injured in the performance of his duties including, in the case of firemen, duty as special fire police, and by reason thereof is temporarily incapacitated from performing his duties, shall be paid … by the county, township or municipality, by which he is employed, his full rate of salary, as fixed by ordinance or resolution, until the disability arising therefrom has ceased. All medical and hospital bills, incurred in connection with any such injury, shall be paid … by such county, township or municipality ….

53 P.S. §637(a).

grievance. The City contends that the arbitrator lacked jurisdiction over the grievance and exceeded his authority under the CBA. We affirm the trial court.

Gregory Freitas has been employed as a firefighter by the City since September 1999. On April 23, 2014, while on duty, he injured his knee. When x-rays revealed no broken bones, he returned to work. However, shortly thereafter, while working at a fire, Freitas' knee "acted up" while he was dragging a hose. Arbitration Award at 5. On April 29, 2014, Freitas filed an accident report, which the City forwarded to its third-party benefits administrator, Excalibur Insurance Management Services, Inc. On July 9, 2014, Freitas had surgery on his knee.

In the interim, in June of 2014, Freitas received a telephone call from Patricia Timlin, who identified herself as an employee of Vocational Rehabilitation Services. Timlin explained that she had received his file from Excalibur Insurance Management Services and offered to help Freitas with his "comp" injury.[2] Arbitration Award at 6. Freitas, who had not filed a workers' compensation claim, rejected her offer. Thereafter, Timlin sent Freitas a release to permit her access to his medical records, which Freitas declined to sign. When Timlin appeared at one of Freitas' medical appointments in Allentown, Pennsylvania, he objected to her presence; she voluntarily left.

On October 2, 2014, the Union filed a grievance that stated:

> No agreement exists that [Union Firefighters] will use a City Doctor nor has there been an agreement regarding the sharing of medical info[rmation] for injured [Firefighters] with VOC

---

[2] Presumably Timlin was referring to a claim under the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

2

rehab or any other case manager. Not only is it a HIPAA[3] violation it is a violation of the CBA.

Reproduced Record at 87a (R.R. ___). On April 1, 2015, the American Arbitration Association assigned Stanley L. Aiges as arbitrator.

After a hearing, the arbitrator sustained the grievance. He saw the core question to be whether the City had improperly interfered with Freitas' rights under Article 12 of the CBA, which guarantees firefighters injured on the job medical benefits and full pay until they return to work. He noted that the Union argued that the CBA did not give the City the right to impose the "'officious oversight' permitted under Workers' Compensation to Heart and Lung benefit recipients." Arbitration Award at 8. The City responded that the CBA did not preclude it from monitoring Heart and Lung benefits. The arbitrator agreed with the Union and explained his decision as follows:

> I am convinced that there is only one logical explanation for the failure of the parties to address the question of "monitoring" Fire Fighters receipt of Heart and Lung benefits: they saw no need to do so. They were fully cognizant of the difference between the Heart and Lung Act and the Workers' Compensation Act. Only the latter allowed for an employer to screen and monitor an injured employee's recuperation….
>
> Any possible question as to that was set to rest by the strongly worded decision of Arbitrator Duff in 1989. And, for the next 24 years the City administered its Heart and Lung program without incident. In that time period, the record establishes, it never sought to impose the monitoring program it used for Workers' Comp recipients on those receiving Heart and Lung benefits.

---

[3] Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104-91, 110 Stat. 1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.).

That fact, standing alone, fully supports the Union's position....
There is no valid reason for me to conclude the City – by virtue
of a change in administration – suddenly acquired a right to
monitor Heart and Lung cases it had never had or exercised
before.

I am unwilling now to read Article 12 as granting such a right
to the City.

I find that the City's effort to seek to assign a "Case Manager"
to monitor Freitas was a violation of his rights under Article 12.

Arbitration Award at 13-14. The arbitrator did not award monetary damages but
directed the City to cease and desist from any future effort to monitor those
firefighters who are eligible for and receive Heart and Lung benefits. The City
appealed the arbitration award to the trial court.

On October 13, 2015, the trial court affirmed. In its decision, the trial
court noted that because there was no record, it assumed that the "'evidence
presented is as recounted in the arbitrator's award.'" Trial Court op. at 3 (citation
omitted). Given the deferential and limited review of arbitration, the trial court
found no reason to vacate the award. The City then appealed to this Court.

On appeal, the City argues that the arbitrator exceeded his jurisdiction
and authority under the CBA. The City does not challenge Freitas' entitlement to
Heart and Lung benefits, and the Union does not assert that Freitas has not
received these benefits. Because the CBA is silent on how it will monitor Heart
and Lung benefits, the City argues it was free to use Excalibur or Vocational
Rehabilitation to monitor their payment to Freitas. The City argues that the award
impinges upon its inherent managerial rights.

In response, Union argues that Act 111 provides that firefighters have
the right to bargain collectively concerning "'the terms and conditions of their

4

employment, including … other benefits….'" Union Brief at 15 (citation omitted). Heart and Lung benefits, which are based on an employee's negotiated salary, constitute a term and condition of employment and, thus, a mandatory subject of bargaining. Stated otherwise, the City had to bargain over the monitoring of the payment and administration of Heart and Lung benefits, and it did not do so.

Review of a grievance arbitration award arising under Act 111 is conducted under a standard of narrow *certiorari*.[4] *City of Beaver Falls v. Beaver Falls Police Association*, 77 A.3d 75, 81 (Pa. Cmwlth. 2013) (citation omitted). The narrow *certiorari* scope of review limits this Court to reviewing questions concerning: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; and (4) deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83, 85 (Pa. 1995). In *McCandless v. McCandless Police Officers Association*, 901 A.2d 991, 1000-01 (Pa. 2006), our Supreme Court further explained the narrow *certiorari* standard of review:

> Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by

---

[4] The Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§217.1-217.10 (Act 111), governs collective bargaining between public employers and their police and fire departments. This Court has summarized its standard of review of an Act 111 arbitration award as follows:

> Where resolution of the issue turns on a pure question of law, or the application of law to disputed facts, our review is plenary. However, where it depends upon fact-finding or upon interpretation of the collective bargaining agreement, we apply the extreme standard of deference applicable to Act 111 awards; that is, we are bound by the arbitrator's determination of these matters even though we may find them to be incorrect.

*Pennsylvania State Police v. Pennsylvania State Troopers Association,* 840 A.2d 1059, 1062 (Pa. Cmwlth. 2004).

5

narrow certiorari, thus allowing for non-deferential review – unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA. [] In other words, in the absence of the noted caveat, *there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were regular, whether there was an excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.*

*Id*. at 1000-01 (citations omitted) (emphasis added). In the instant case, the City argues that the arbitrator lacked jurisdiction and exceeded his powers.

We begin with Article 12 of the CBA, entitled "Injury Leave-Sick Leave-Insurance." It states, in relevant part, as follows:

**Section 1.** Whenever a member of the Fire Department is incapacitated from duty because of sickness contracted as a result of working conditions or an injury sustained in the performance of his duty, he shall be entitled to sickness or injury leave with full pay during the period which he is unable to perform his duties until such time as he has been accepted for retirement by the Firemen's Pension System.

Whenever a member is injured or becomes ill or becomes partly or permanently disabled in the line of duty while being engaged in Fire Fighting Services rendered to other communities through the Mutual Agreement Plan with other communities, he shall be entitled to all benefits under this Agreement.

**Section 2.** The City shall pay the hospital, medical and surgical expenses incurred by any member of the Department who is injured in the performance of his duties. If a Fire Fighter is injured while performing job related activities and is not compensated for hospital transportation by Worker[s'] compensation, the City shall provide such transportation free of charge.

6

R.R. 33a-34a. Article 12 guarantees a firefighter who suffers a work-related injury "full pay during the period which he is unable to perform his duties" and medical benefits; it says nothing about how these benefits will be monitored by the City.

Article 16 of the CBA, entitled "Grievance Procedure," is also relevant to the question of the Arbitrator's jurisdiction. Article 16 states, in relevant part, as follows:

> **Section 1.** The purpose of the grievance procedure shall be to settle all grievances between the Fire Department and the Union as quickly as possible, so as to insure efficiency and promote employees' morale.
>
> *Should any employee or group of employees feel aggrieved as a result of **any condition** arising out of the employee-employer relationship*, including the claim of unjust discrimination on any matter or condition affecting health and safety beyond those normally encountered in all phases of fire fighting, adjustment shall be sought as follows by the employee, with the assistance of the Union ….

R.R. 44a (emphasis added). The Union argues that because Freitas' grievance relates to a "condition arising out of the employee-employer relationship," *i.e.*, Heart and Lung Act benefits under Article 12 of the CBA, the arbitrator had jurisdiction to decide the grievance. We agree.

As our Supreme Court explained in *City of Philadelphia v. International Association of Firefighters, Local 22*, 999 A.2d 555, 564 (Pa. 2010), the "jurisdiction prong of narrow certiorari" relates to whether the arbitrator may address a "general class" of controversy. Article 12 and Article 16 gave the arbitrator jurisdiction over "any condition arising out of the employer-employee relationship," which includes Heart and Lung benefits. Accordingly, the arbitrator's jurisdiction was not limited to timely payment but "any condition"

7

relating to Heart and Lung benefits, such as the appointment of a case manager to monitor an injured firefighter. It is the type of controversy that is subject to grievance arbitration.[5]

An arbitrator exceeds his powers under the narrow *certiorari* test if "he mandates ... an illegal act ... or requires a public employer to do that which the employer could not do voluntarily." *City of Scranton v. E.B. Jermyn Lodge No. 2 of Fraternal Order of Police,* 903 A.2d 129, 135 (Pa. Cmwlth. 2006) (citations omitted). Essentially, "if the acts an arbitrator mandates the employer to perform are legal and relate to the terms and conditions of employment, then the arbitrator did not exceed his [] authority." *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Keyes)*, 54 A.3d 129, 133 (Pa. Cmwlth. 2012) (citing *Commonwealth v. Pennsylvania State Troopers Association*, 23 A.3d 966 (Pa. 2011)).

---

[5] In its Reply Brief, the City focuses on *Borough of Jenkintown v. Hall*, 930 A.2d 618 (Pa. Cmwlth. 2007), for the proposition that the arbitrator lacked jurisdiction over the grievance. In *Jenkintown*, Hall, a probationary police officer, filed a grievance when the borough did not give him a permanent position on the police force. The CBA did not have "specific language" giving a probationary police officer the right to grieve. *Id.* at 624-25. The arbitrator looked at the parties' prior CBAs, which included language that "[p]robationary officers shall not have the right to grieve under this contract," and concluded that the absence of this language from the current CBA meant that the drafters intended to allow probationary officers to grieve. *Id.* at 625. This Court noted that its review of the arbitrator's award was plenary because the jurisdictional question was purely one of law. This Court concluded that "the relevant collective bargaining agreement d[id] not even mention probationary officers; *a fortiori*, the agreement fails to refute the at-will employment status of probationary officers." *Id.* at 625. In examining the relevant CBA, this Court observed that it was "dead silent on probationary officers" and "[f]rom silence, one cannot infer a specific intent to effect a change in Hall's status from an at-will employee to one with grievance rights." *Id.* at 625-26. *Jenkintown* teaches that an arbitrator may not add words to a CBA that is silent on the matter. If anything, it supports the award at issue here. Articles 12 and 16 of the CBA expressly state that the arbitrator has jurisdiction over "any condition arising out of the employer-employee relationship," such as Heart and Lung benefits, which is the subject of Freitas' grievance.

An arbitrator cannot always determine the parties' intent through interpretation of the express provisions of a collective bargaining agreement because it is simply impossible for parties to anticipate every possible scenario that might arise. The arbitrator addressed the CBA's silence on monitoring as follows:

> There are several obvious reasons why an agreement may be silent on a given point. The silence may reflect an absence of accord. Or, it may reflect an agreement not to deal with a particular subject. Or, silence may simply reflect the parties' belief that it is unnecessary to deal with the point. That is, their understanding of the matter was so clear, so well accepted by both, that language was not necessary.
>
> ***
>
> I am convinced that there is only one logical explanation for the failure of the parties to address the question of "monitoring" Fire Fighters receipt of Heart and Lung benefits: they saw no need to do so. They were fully cognizant of the difference between the Heart and Lung Act and the Workers' Compensation Act. Only the latter allowed for an employer to screen and monitor an injured employee's recuperation. The two Acts were independent of each other.

Arbitration Award at 12-13. The arbitrator supported his conclusion by examining the parties' past practice.

> A custom or practice is not something which arises simply because a given course of conduct has been pursued by Management or the employees on one or more occasions. *A custom or a practice is a usage evolved by men as a normal reaction to a recurring type situation.* It must be shown to be the accepted course of conduct characteristically repeated in response to the given set of underlying circumstances. This is not to say that the course of conduct must be accepted in the sense of both parties having agreed to it, but rather that it must be accepted in the sense of being regarded by [parties] involved

9

as the normal and proper response to the underlying circumstances presented.

*County of Allegheny v. Allegheny County Prison Employees Independent Union,* 381 A.2d 849, 852 n.12 (Pa. 1977) (citation omitted) (emphasis added).

Here, the arbitrator referred to a 1989 arbitration and observed that in the 24 years since that award, the City has administered its Heart and Lung program without the imposition of the monitoring program it uses for workers' compensation recipients. Arbitration Award at 13. We are bound by the arbitrator's factual findings. The arbitrator was unpersuaded that the City suddenly acquired the right it had never asserted before to monitor Heart and Lung cases in the manner of its choosing.

The arbitrator's consideration of past practice was appropriate where, as here, there is no express language in the CBA for monitoring Heart and Lung benefits. The City argues that if it is

> precluded from monitoring Mr. Freitas' and other employees' disabilities and obtaining the necessary medical information as to the nature and extent of its employees' injuries – as [the arbitration] award mandates – the City's ability and right to challenge or terminate an employee's [Heart and Lung] Act benefits will be essentially erased, as well as the City's managerial rights.

City Brief at 22. The City believes it has been ordered to do an illegal act or an act that which it cannot do voluntarily. We disagree.

The City has been administering Heart and Lung benefits without a monitoring program for 24 years and, apparently, without dispute or incident. When the City became concerned about its inability to monitor disabilities and

10

obtain necessary medical information, it should have negotiated for such a mechanism.[6] It did not do so.

The arbitrator's award does not prevent the City from terminating a firefighter's Heart and Lung benefits when eligibility ends or from bargaining for a program to monitor Heart and Lung benefits. However, the City lacked authority under the CBA to appoint a "Case Manager" to monitor Freitas and other firefighters eligible for and receiving Heart and Lung benefits.

For the reasons stated above, we affirm the decision of the trial court.[7]

_____
MARY HANNAH LEAVITT, President Judge

---

[6] For example, the Collective Bargaining Agreement between the Commonwealth of Pennsylvania and the Pennsylvania State Troopers' Association, effective July 1, 2000, to June 30, 2004, states in Article 28, Section 9, that "[m]atters dealing with Heart & Lung shall be addressed in AR 4-4 as agreed to. Subsequent changes in AR 4-4 Heart & Lung Procedures shall be subject to bargaining." https://www.dol.gov/olms/regs/compliance/cba/pdf/cbrp1647.pdf (last visited July 18, 2016).

[7] In his grievance, Freitas also challenged the City's sharing of his medical information with a third-party provider or Vocational Rehabilitation as a violation of the Health Insurance Portability and Accountability Act (HIPAA). R.R. 87a. It is not necessary for this Court to consider this issue.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Wilkes-Barre, : 
          Appellant : 
           : 
          v. : No. 2170 C.D. 2015 
           : 
Fire Fighters Local Union : 
No. 104 : 

## **O R D E R**

AND NOW, this 20th day of July, 2016, the order of the Court of Common Pleas of Luzerne County, dated October 13, 2015, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge